BLAKEY, Adm'r, et al. v. THE HEIRS OF BLAKEY.

1. There cannot be a valid gift at common law, where the donor retains control and dominion over the subject of the gift during his life.

2. Where a gift is alledged to be evidenced by a deed, which is not produced, but an attempt is made to prove the gift by parol evidence, the withholding of the deed casts suspicion over the entire transaction.

3. The Chancery Court may take jurisdiction after proceeding, have been commenced in the Orphans' Court, in a proper case, and having jurisdiction for one purpose, retain it for all purposes, and make a final settlement.

4. Where the assets are withheld by the administrator, claiming them as his own, by a secret gift, the Chancellor may interpose, arrest further proceedings in the Orphans' Court, compel a discovery of the assets, and proceed to make final settlement and distribution.

Error to the Chancery Court at Barbour.

The bill was filed by the defendants in error, a portion of the heirs of Jesse Blakey, and charges, that Jesse Blakey died possessed of a considerable personal and real estate, free from debt. That Asa Blakey was appointed administrator, and possessed himself of the personal estate, including a number of slaves. That Silas Blakey, with the consent of the administrator, has sold some baled cotton, belonging to the estate, and collected money due to it, and retains the same in his hands.

That the administrator had not made to the Orphans' Court a true inventory, but has fraudulently omitted the slaves, baled cotton, corn, debts, &c. That the administrator has fraud-

ulently procured an order of the Orphans' Court for the sale of the real estate, under the pretence that such sale is necessary for the purpose of distribution, with the design of buying in the land for a mere trifle. That by collusion between the administrator, and Silas, and John D. Blakey, two of the heirs, it is pretended that the administrator is to have the use of the slaves, and Silas was to have for his own use all the money collected since the death of the intestate, besides claiming an interest in the residue. That the administrator refuses to distribute the estate in any other way. The prayer of the bill is, for a discovery, account, and distribution, &c.

The administrator, in his answer to the bill, asserts, that he made a full and fair return of the personal property of the deceased. Denies that the deceased was possessed of any slaves at his death ; that the deceased, previous to his death, by deed of gift, dated 15th September, 1831, conveyed to him a negro girl, by the name f Rose, and her child, which have now increased to four, and they have ever since been under his control, and in his possession, the design of the gift being, to make a provision for him, not having had the use of his lower limbs from his youth ; that the cotton belonged, three bales in store to him, and five or six bales on the premises of the deceased, to John D. Blakey ; that the deceased and his two brothers cropped together, and at the end of the year, made a division of the proceeds, and that a division of the crop, for the year 1841, had taken place before intestate's death, which took place on the 23d March, 1842 ; that he has made sale, under an order of the Orphans' Court, of all the personal property of the intestate, which he is ready to distribute, &c. Denies knowing of any money due the intestate at his death ; That intestate was indebted to his co-defendant $210, which has been presented to the Orphans' Court for allowance. He denies all fraud and demurs to the bill.

The answer of Silas Blakey is, in substance, the same as the preceding, except that he asserts title to a negro girl by the name of Peggy. He admits she was on the premises of deceased at the time of his death, because they were cropping together, but that the deceased has had no title to her since the 15th September, 1831, at which time, she was con-

veyed to him by bill of sale by the deceased, for a valuable consideration. Exhibits are made of both these deeds.

J. D. Blakey also answered the bill, which, so far as he is concerned, corresponds with the previous answers.

Evidence being taken on both sides, and the cause coming on to be heard, the Chancellor considered, that there was no satisfactory evidence to show a gift of the slaves, the deeds relied upon in the answers not being produced, or proved, and directed a reference to the Master, to take an account of the estate of the intestate, and the value thereof, except the land and slaves—to report who were the heirs, and distributees, the portion of each, and whether any had been advanced in the lifetime of the parent. Further, to inquire, whether it was most for the interest of the parties that the land and slaves should be sold for cash or on credit.

The Master reported, that it was most for the interest of the parties, that the land and slaves should be sold, and as to the other matters referred to him, asked further time. This report was confirmed by the court, and a sale accordingly ordered.

From this decree this writ is prosecuted.

Sayre, for plaintiff in error, contended, that the court had no jurisdiction; that the Orphans' Court had power to impannel a jury, and to try every question presented upon the record. He further insisted, that if the court had jurisdiction, the Chancellor erred upon the merits of the case. He cited 2 Lomax's Ex'rs, 473; 1 Story's Com. 549; 2 Porter, 328; 5 Ala. Rep. 117; 2 Leigh, 490; 1 Story's Com. 91; 2 Munford, 260; 4 Hen. & M. 478; 1 Wend. 583; 3 Paige, 557; 2 S. & P. 9; 9 Porter, 656.

Elmore, contra, in support of the jurisdiction of the court, cited 1 Story's Eq. 2 ed., 505-14, 543-6; 8 Porter, 380.

Upon the merits, he insisted, that it was clear there was no gift. The conveyances were not produced, or proved, and as the possession was not parted with, there could be no gift at common law.

ORMOND, J.—Upon the merits, this case is clearly with the defendants in error. It is satisfactorily proved by many witnesses, that the deceased remained in possession of the slaves until his death, exercising ownership over them. There appears, it is true, to have been a rumor in the neighborhood, that the slaves belonged to the sons, who claim them, and declarations of the father are proved, which might lead to such a conclusion; but these are not sufficient to divest his title. Nothing is proved, which in law would amount to a gift. The deeds of gift said to have been executed in 1831, are not produced, or proved, and justify the inference that if produced, they could not be sustained. The fact that this conclusive proof, if it exists, is not produced, weakens the force, and throws discredit upon the inferior testimony adduced of the same fact, if indeed it does not render it entirely valueless. But independent of this consideration, there is no proof of a gift of the slaves. The declarations of the deceased upon the point, were contradictory at different times, nor does it appear that he ever parted with the possession, or the right to exercise control, or dominion over them, during his life, and there could not therefore be a valid gift of them at common law.

Conceding that the jurisdiction of Chancery, is concurrent in testamentary matters with the Orphans' Court, and that the court which first obtains jurisdiction, will be entitled to keep it, there are many cases in which the Court of Chancery may take jurisdiction, after the proceedings have been commenced in the Orphans' Court, and having obtained jurisdiction for one purpose, retain it for all purposes, and make final settlement. See the case of Leavens v. Butler, 8 Porter, 399, where this question is fully considered.

In all cases where trusts are to be executed, or a discovery of assets is wanted, the power of the Orphans' Court is inadequate to afford the necessary relief.

This appears to be a case peculiarly proper for the interference of Chancery, nearly all the assets being withheld by the administrator claiming them as his own, by a secret gift, and we feel entirely satisfied, that such a case is made by the bill, as authorized the Chancellor to interpose, arrest fur-

ther proceedings in the Orphans' Court, and proceed to make sale of the property, and a final settlement of the estate. Let the decree of the Chancellor be affirmed.