# Pollak *v.* Winter.

### *Assumpsit.*

(Decided Jan. 13, 1910.   Rehearing denied Feb. 26, 1910.   51 South. 998.)   (See also 52 South. 828, and 53 South. 339.)

1. *Evidence; Burden of Proof; Negative Averments.*—Although the general rule is that the burden of proving a negative averment is not on the plaintiff, yet in an action on an open account, the plaintiff does not carry the burden by merely showing the rendition of service and value of same, but must offer some evidence that it is not paid.

2. *Pleading; Payment; New Matter.*—In an action on a contract payment after breach is new matter and must be pleaded and proven by the respondent.

3. *Contract; Breach; Burden of Proof.*—In an action on a contract and a plea of the general issue, the plaintiff must sustain the burden of proof by showing the breach of the contract before becoming entitled to the affirmative charge.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Assumpsit by Sallie Winter as administratrix against Ignatius Pollak. Judgment for plaintiff and defendant appeals. Reversed and remanded.

J. B. BROWN, for appellant.—The general issue is an averment that the allegations of the complaint are untrue and puts in issue all the allegations made in the complaint.—Sec 5331, Code 1907; *L. & N. v. Trammel,* 93 Ala. 352; *K. C. M. & B. v. Crocker,* 95 Ala. 427; *Fields v. Brice,* 108 Ala. 642; *Amer. O. E. Co. v. Ryan,* 112 Ala. 346; *Alexander v. Woodmen of the World,* 49 South. 883. The fact that payment was pleaded along with the general issue does not destroy the effect of the general issue or relieve the plaintiff of the burden of making out her suit.—*Alexander v. W. O. W. supra; McDonald v. Montgomery St. Ry.,* 110 Ala. 174; *L. & N. v. Hall,* 87 Ala. 733; *S. & N. A. R. R. Co. v. Schauffler,* 75 Ala. 137; *Carter v. Chambers,* 79 Ala. 229; *Andrews v. Hall,* 132 Ala. 320; *Cross v. Esslinger,* 132 Ala. 410. Whatever is necessary to be alleged in the special count in an action of assumpsit must be proved to support a common count for the same cause of action.—*Landrum v. Brookshire,* 1 Stew. 252. The basis of this action is a contract to pay plaintiff's testator for services rendered; the very gist of the breach of the contract—non-payment, and in the absence of evidence showing a breach of the contract, the presumption is that the defendant met his obligation by paying at maturity.—*Cook v. Malone,* 128 Ala. 664; *Rice v. Sloss,* 90 Ala. 419; *Ennis v. Harris,* 103 Ala. 330; 10 N. Y. 316; 130 N. Y. 504; 16 Ency P. & P. 174. If the averment that said sums of money are due and unpaid be treated as a negative averment, the burden is on the plaintiff to show.—*Rodgers v. Brooks,* 105 Ala. 549; *G. W. R. Co. v. Bacon,* 83 Am. Dec. 199.

GUNTER & GUNTER, for appellee.—The defendant in this case must meet the case made by denying the fact that work was done at his request and its value, or he must plead and prove some special defense such as payment.—16 Cyc. 926-7; 1 Greenl. 71; 3 Elliott on Evid. 1073; *Howell v. Williamson*, 14 Ala. 419; *Cook v. Malone*, 128 Ala. 602; *Shines v. Steiner*, 76 Ala. 458; *Blackshear v. Burke*, 74 Ala. 239; *Brigham v. Carlisle*, 78 Ala. 243. See also the following cases as contrary to the insistence made by the appellant.—*Edmonds v. Edmonds*, 1 Ala. 401; *McLendon v. Hamblin*, 34 Ala. 86; *Shulman v. Brantley*, 50 Ala. 81; *McFarland v. Dawson*, 128 Ala. 561; 3 Brick. Dig. 698; *Levystein v. Whitman*, 59 Ala. 345; *Harwood v. Pearson*, 60 Ala. 410; *Wolffe v. Nall*, 62 Ala. 24; *McCurdy v. Middleton*, 82 Ala. 131; *Snodgrass v. Caldwell*, 90 Ala. 319; *Pearce v. Walker*, 103 Ala. 250.

ANDERSON, J.—As a general rule the burden of proving a negative averment is not upon the plaintiff, but this rule does not seem to prevail in actions upon an open account, as distinguished from a stated or uncontroverted one; and when suit is brought upon an open account the plaintiff does not overcome the burden by merely showing the rendition of service and the value of same, but must offer some proof that it was not paid for when rendered or when due.—*Rice v. Schloss*, 90 Ala. 416, 7 South. 802; *Cook v. Malone*, 128 Ala. 664, 29 South. 653; *Enis v. Harris*, 103 Ala. 330, 15 South. 834; 16 Encyc. of Pl. & Pr. 174-179; *Van Giesen v. Van Giesen*, 10 N. Y. 316; *Lent v. New York R. R. Co.*, 130 N. Y. 504, 29 N. E. 988; *Great Western Railroad v. Bacon*, 30 Ill. 347, 83 Am. Dec. 199. All the authorities seem to agree that payment after a breach is new matter, to be specially pleaded and prov-

[Pollak v. Winter.]

en by the defendant, and, while they are divided as to whether or not the plaintiff must prove non-payment when due or at maturity, the weight is with the holding of this court, and seems to proceed upon the theory that the plaintiff must prove a breach of the contract sued on, and in order to do this he must show that his debt was not paid when contracted or at maturity After the plaintiff shows a breach of contract, and the defendant relies upon payment subsequent to said breach, he must plead and prove payment, which said subsequent payment cannot be shown under the general issue.

The plaintiff in the case at bar, not having shown a breach of the contract sued on, was not entitled to the general charge, which was erroneously given by the trial court, inasmuch as the defendant interposed a plea of the general issue. The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SAYRE and EVANS, JJ., concur.

Note by ANDERSON, J.—After this case was put out, it was again carefully considered upon rehearing, the opinion was considered as sound, and the application was overruled. After this one of the concurring judges put it back on the rehearing docket, and the question was considered en banc; and while Justice EVANS withdrew his concurrence, and dissents, the opinion is concurred in by DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., who, with the writer, constitute a majority of the court. Justice SIMPSON was absent, and Justice MAYFIELD did not wish to dissent or concur.

[Pollak v. Winter.]

EVANS, J. (dissenting).—This case was assigned to, and the opinion prepared by, Justice ANDERSON. The "note by Anderson, J.," appended thereto, states that one of the judges, after having concurred on the original consultation and on the application for a rehearing, "put it back on the rehearing docket and the question was considered en banc." The note fails to state the name of the judge who did this; so, in order that there may never be any doubt as to who this unnamed judge is, I will now and here state that I am the man. I did this for the reason that I believed the opinion was correct* until after the application for a rehearing was overruled. Some time after this was done I was one day thinking of the case (the same having been called to my mind by a pamphlet sent me by Hon. W. A. Gunter, counsel for the plaintiff and appellee in this case, entitled "Some Observations on Law Points in a Recent Case"; the "recent case" being this case), and I became doubtful of the correctness of the opinion. On more thorough investigation, I became convinced that the opinion was erroneous. Being a concurring judge, and finding that I was mistaken in my former opinion, and having the privilege of bringing the case back before the court for reconsideration by the whole court, unless the other judges, who had already passed on it, agreed with me, I felt it my duty, under my obligation and oath as a judge, to do so.

Why did I not do this at first—make the investigation which led to my present conclusion? The reason is this: That each judge has assigned to him four times as many cases as he can possibly investigate and write as should be done, especially if he understands the law after he investigates. Our system of pleading is like an exogenous plant, whose capacity for multiplying limbs is only limited by the climate and the fer-

tility of the soil. It must be admitted that no system of pleading can ever be perfect in its operation and effect, as long as men are imperfect. And, if men were perfect, almost any system would do; but as long as morality lags behind intelligence, as long as men have more knowledge than virtue, we ought, in all things that pertain to our government, have that system which will give the greatest aid and comfort to these neglected children. What that system should be in this state could in my opinion best be devised after a most thorough investigation into the workings of the different systems of pleading of the different states and countries of civilization by a body of men most learned in the law and altruistic in character.

It may be true that the common-law system had its snake heads; but it seems to me that in nearly every instance, where one has been cut off by our Legislature, two or more have grown out to take its place. Under our present system one may plead as many pleas as he pleases; he may plead inconsistent pleas. The plaintiff may reply with as many replications as he pleases, and with inconsistent replications, and so on. As to whether there shall be one or a thousand issues of law or fact depends upon "the climate and the fertility of the soil." The only natural place for this process to stop, with counsel who understands his business, is when he has reached a point where he feels reasonably sure of a verdict or a reversal of the judgment.

We have also the written charge which counsel for either party may ask. In this, if his vocabulary is large, his knowledge of the meaning of words accurate, and his imagination vivid, he may ask a dozen of such charges on each point of law involved in the case, each one stating the point correctly, but in different words; and he may also ask a dozen more on each point which

[Pollak v. Winter.]

states the law almost correctly. Supposing that there were only 100 issues, and only 12 written charges asked by each side upon each issue, there would still be 1,200 written charges to each side to be passed upon by the trial court. Suppose that 600 are given and 600 refused to each side, then there would be 1,200 to be reviewed by this court, besides the probability that the jury was too much instructed to understand the instruction. Do I object to the system? I cannot say that I do. While, as a citizen or a judge, I deplore it, yet as a lawyer and dialectician I rejoice in it. As a means for the administration of justice, its efficacy is to be doubted; while as an intellectual gymnasium its appointments could scarcely be improved upon. I make this digression merely in explanation of my conduct in not having investigated sooner than I did, and to show why I made two guesses beforehand.

The complaint is in assumpsit, and contains two of the common counts. They are as follows: "The plaintiff claims of the defendant the sum of $3,000 due by account from him to her testator, John G. Winter, in his lifetime, on, to wit, the 21st day of February, 1904; and plaintiff claims of the defendant, a like sum for work and labor done by her testator for the defendant at his request, during, to wit, the years 1901, 1902, 1903, and 1904, which said sums, with interest thereon, are due and unpaid." I wish to say just here that the word "unpaid," as used above, is tautologous, as the idea expressed by it is included in the meaning of the word "due," which preceded it; for the word "due" carries with it, not only the meaning that the time for payment has arrived or past, but also that the debt is unpaid—that is, still owing. The Code form for a promissory note is as follows: "The plaintiff claims of the defendant—— dollars, due by promissory note

made by him on the ——— day of ——— and payable on the ——— day of ———, with interest thereon." Here the word "due" means that the debt is owing, and hence unpaid. The sum of money claimed cannot be due if it has been paid. In a suit on an account stated, the Code form, being one of the common counts, ends as follows: "Which said sum of money, with the interest thereon, is due and unpaid."

I have set forth the counts of the complaint, and also the forms for counts upon promissory notes and accounts stated, in order to bring them all before the reader's eye, that he may see that there is either no difference, or no material difference, between them upon the allegation of nonpayment. The opinion says (the italics mine): "As a general rule the *burden* of proving a *negative averment* is not upon the plaintiff, but this rule does not seem to prevail in actions upon an *open account*, as distinguished from a *stated* or *uncontroverted one;* and when suit is brought upon an open account, the plaintiff does not overcome the burden by merely showing the rendition of service and the value of same, but must offer some proof that it was not paid for when rendered or when due"—citing *Rice v. Schloss*, 90 Ala. 416, 7 South. 802; *Cook v. Malone*, 128 Ala. 664, 29 South. 653; *Enis v. Harris*, 103 Ala. 330, 15 South. 834; 16 Cyc. of Pl. & Pr. 174-179; *Van Giesen v. Van Giesen*, 10 N. Y. 316; *Lent v. N. Y. R. R. Co.*, 130 N. Y. 504, 29 N. E. 988; *Great Western R. R. Co. v. Bacon*, 30 Ill. 347, 83 Am. Dec. 199. I hope to demonstrate that there can be no distinction drawn between a suit upon an open account, a suit upon a stated account, and a suit upon a promissory note, so far as the burden of proof as to payment vel non of the debt sued upon is concerned. As has already been shown, the averment in the complaint that the debt

sued on is still unpaid is substantially the same in all three.

We will suppose, by the way of illustration, that A. is a wholesale merchant, and that B., C., and D., is each a retail merchant. A. sells and delivers to B. a bill of goods for $100, payable 90 days after date, and similar bills to C. and D. for the same amount and on same time. To evidence the debt due by B., he takes B.'s promissory note; as to C. he renders him, on the week following the sale, an itemized statement of the account, which C. either admits to be correct or fails to object to its correctness; but as to D. he neither takes a promissory note nor renders him a statement of the account. The 90 days expire, and A. brings suit against B. on his promissory note, against C. on the account stated, and against D. on the open account. It seems too plain for argument that the real cause of action in each case is the debt due for the bill of goods sold and delivered to each of defendants, and that the only difference between the three suits is in the manner of proving the debt. In the first case A. makes out a prima facie case when he proves the debt and date of payment, by introducing his note; in the second, when he proves the debt by showing that the account sued upon was rendered by plaintiff to defendant, and defendant admitted its correctness or failed to deny its correctness; in the third, when he introduces a witness, either himself or some one else, who was present at the time of the sale and delivery, and who knows all the facts of it, and testifies thereto. To say that in the case of the open account the burden of proof was upon the plaintiff to show that the debt was not paid at or before maturity, but that in the case of the note and the stated account the rule is otherwise, is to make a distinction where there is no difference. To say that in a

suit on an open account the burden of proof is upon the plaintiff to show, to the reasonable satisfaction of the jury, that the goods were not paid for when bought, is simply to say that in a suit upon an open account the burden of proof was upon the plaintiff to show that there was an open account, just as he would have to prove in the suit on the note that the defendant had executed such a note as the one described in the complaint, or, on the account stated, that he held such an account as that sued upon, which had been stated to the defendant, at some time prior to the bringing of the suit, and its correctness admitted or not denied by him.

In a cash transaction there never is the relation of creditor and debtor; nor can there be, in such case, an open account. This is clearly stated by Justice Sharpe in the case of *Cook v. Malone,* 128 Ala. 665, 29 South. 653. This is one of the cases cited by Justice ANDERSON as an authority for the position taken by him. The question there arose upon a plea of set-off. I quote from the opinion as follows: "In this case the payment the plaintiff sought to prove was not of a *debt,* but was one occurring in the consummation of a cash purchase. A sale wherein no credit is either expressly or impliedly given, but which is strictly for cash, is not consummated until the consideration is paid. In such a sale, payment concurs with the passing of the ownership in the property, so that no *indebtedness* for the price can intervene." The italics are mine. All that Justice Sharpe, and the judges who agreed with him, meant by this decision, was that, if a party alleges that he holds an open account against his adversary, the burden of proof is upon him to show it. If the transaction out of which the indebtedness is alleged to have arisen is a sale of goods or chattels, then the burden is upon the

one alleging that the sale was on credit to reasonably
satisfy the jury that such is the case.  But it will be
observed that the nature of the transaction must have
great weight in determining whether or not a given
transaction was on credit or for cash.  For instance,
by the general custom of this country sales of cotton are
for cash; and, when a sale and delivery of cotton is
shown, without anything being proved as to whether the
sale was for cash or on credit, the natural presump-
tion would be that it was a cash transaction.  If it was
a cash transaction, then the title to the cotton would
not pass until the money was paid.  No debt could
arise.  So, if the sale was in fact on credit, and the
seller should sue in assumpsit for the price of the cot-
ton, the burden would be upon him to prove the debt,
by showing that the sale was on credit.  But, on the
other hand, in a transaction like the one declared on
in this case by the plaintiff, credit must almost of ne-
cessity be extended by one party or the other to the
transaction.  Either the client must pay for work be-
fore it is done, and thereby extend credit to his attor-
ney for the performance of the work, or else the attor-
ney must do the work first and thereby extend credit to
his client.  It will be easily understood that an attor-
ney cannot retain the title to his work until the fee is
paid.  When service is rendered, it is gone forever
from the man who rendered it, and the man for whom
and at whose request he rendered it owes him a debt.
The cases in which the client pays for services of an
attorney before they are rendered, I dare say, are quite
as rare as are the sales of cotton on credit.  While in
either a suit for the price of cotton sold by plaintiff to
defendant, or for work and labor done by plaintiff for
defendant at his request, the burden is upon plaintiff,
in the first instance, to prima facie prove a debt owing

by defendant to plaintiff, yet, the presumptions being different, the facts necessary to be proven to make such a prima facie case are different. In the case of work and labor done for and at the request of defendant, there is no presumption that it was paid for before it work was done first, then a debt was created, credit was extended, and when a debt is shown to have once existed there is no presumption that it has been paid, and, if the defendant relies upon payment to defeat the action, he must plead it and prove it. It was doubtless out of. this necessity for extending credit in the ordinary transactions of life, where labor had to be performed by one party to the contract and money paid by the other as compensation for the labor, that common-law liens arose by implication as security for services rendered. As stated in 19 American & English Encyc. of Law (2d Ed.) p. 8, under head of "Implied Liens for Service": "It is a principle of the common was done, for such is not generally the case. If the law that every man who has lawful possession of a chattel upon which he has expended his money, labor, or skill at the request of its owner, thereby enhancing its value, may detain it as security for his debt. This right extends to all such manufacturers, tradesmen, and laborers as receive chattels for the purpose of repairing or otherwise improving their condition. Upon the same principles, or upon principles very simular to it, the law gives a lien to common carriers, innkeepers, warehousemen, and wharfingers. Such liens, being consistent with the principles of natural equity, are favored by the law, which is construed liberally in such cases." Undoubtedly these common-law liens arose from the practical necessity of the laborer extending credit under such conditions, since it is impracticable to make cash transactions in such cases. Again says

the same authority (same volume, p. 10) : "The foun-
dation of all common-law liens is a debt or charge
growing out of a contract express or implied." It
would be safe to say that, if there was not this essen-
tial difference between sales of labor and sales of com-
modities, there would never have been any implied lien
at common law upon the chattel repaired; nor in favor.
of common carriers, innkeepers, warehousemen, or
wharfingers upon the chattels intrusted to them for the
debt due them for services rendered with reference to
such chattels. I am of opinion, therefore, that, while
the sales of chattels are presumed to be for cash, sales
of labor are presumed to be on credit, and that while,
in a suit in assumpsit for the price of goods sold by
plaintiff to defendant, the burden of proof is upon the
plaintiff to show that the sale was on credit, the pre-
sumption being that it was for cash, still in a suit in
assumpsit for work and labor done by plaintiff for de-
fendant at his request, the presumption being that it
was done on credit, or, to speak less broadly, there be-
ing no presumption that it was paid for before it was
performed, therefore, the plaintiff makes out a prima
facie case when he proves that he did the work and la-
bor for defendant at his request, as alleged, and the
value thereof, and that the date of payment is passed,
unless he must go further and prove that the debt al-
ready shown to have existed was not paid at or before
maturity.

The opinion says that: "When suit is brought upon
an open account, the plaintiff does not overcome the
burden by merely showing the rendition of the service
and the value of the same, but must offer some proof
that it was not paid for when rendered or when due."
And again the opinion says that: "All the authori-
ties seem to agree that payment after a breach is new

matter, to be specifically pleaded and proven by defendant; and, while they are divided as to whether or not the plaintiff must prove nonpayment when due or at maturity, the weight is with the holding of this court, and seems to proceed upon the theory that the plaintiff must prove a breach of the contract sued on, and, in order to do this, he must show that his debt was not paid when contracted or at maturity. After the plaintiff shows a breach of contract, and the defendant relied upon payment subsequent to said breach, he must plead and prove payment, and which said subsequent payment cannot be shown under the general issues." Three opinions of this court are cited as authority for this assertion : *Rice v. Schloss,* 90 Ala. 416, 7 South. 802; *Cook v. Malone,* 128 Ala. 664, 29 South. 653; *Enis v. Harris,* 103 Ala. 330, 15 South. 834. In the case of *Enis v. Harris,* the quetsion was upon the sufficiency of the affidavit made by, or for, plaintiff in suit upon a verified account under section 2773 of the Code of 1886, and simply decides that the affidavit was not such as the statute authorized in such cases. That statute was a special privilege conferred upon plaintiff —a right not allowed by common law. No matter what provision it contained, the affidavit would have had to conform to it, before it would have been competent for the purposes intended. There is no necessary connection between the requirements of that statute and the common-law rule as to the burden of proof. The case of *Cook v. Malone,* cited, I have already analyzed in a former part of this dissenting opinion. There remains but the single case of *Rice v. Schloss,* prepared by that eminent jurist, Justice Thomas N. McClellan, in the early days of his judicial career. The Greeks used to say that "Jupiter sometimes nods." If the language of this opinion is to be taken as authority for all that

is said on the subject of the burden of proof in suits upon open accounts, then I confess that it goes much further than the opinion by Justice ANDERSON in the case sub judice. Justice McClellan in that opinion says: "Of the charges given at the request of plaintiff, only the sixth, to the effect 'that the burden of proving any payments on the account sued on, or any set-offs is on the defendant,' is open to criticism. Its fault lies in the assumption that the account is shown to have been a stated account, in which case only would the burden of proof as to payments rest on the defendant. Whether the account was stated or not was a question for the jury, as it cannot be affirmed that the evidence on this point was without conflict and free from adverse inferences. If the account was not a stated or uncontroverted account, it was, of course, on the plaintiff to show the balance due on it after allowing credits for all payments." Why "of course" the opinion fails to state. It gives no reason for the assertion. It cites no authority, for the very good and sufficient reason that neither existed. A decision on the common law, that has not got the reason of the law back of it, is not an authority; for reason is the life of the law, and, if you want a law to stand which is contrary to reason, you must have it enacted into law by the Legislature, for otherwise the courts will not respect it. If this opinion is a correct statement of the law, then not only must the plaintiff prove all payments made at or before the time the account for the goods sold and delivered was payable, but he must prove all payments made subsequent to the breach of the contract as well, at least up to the time of bringing suit, and possibly up to the time of trial. If the account has been paid in full the burden of proving that he has no account against defendant is upon the plaintiff. If the burden is upon

the plaintiff to prove the payments made by the defend-
ant upon the account sued upon, then, if payment is
the only defense the defendant has, he might go a-fish-
ing the day his case is set for trial. But one cannot
help smiling, when he thinks about what might happen
to the defendant, if the plaintiff should happen to forget
to make the proof for him. It would doubtless be wise
for defendant to remain about the court room, so as to
remind the plaintiff of his duty. The plaintiff might
even forget that any payments had been made.

I think I have demonstrated in the first part of this
opinion that there can be no distinction on this point
between an open account, a stated account, and a pro-
missory note. I shall now undertake to show and make
clear what is necessary to be proved in order to make
out a prima facie case of the breach of the contract
sued upon, in a suit in assumpsit, whether the suit is
upon an open account, a stated account, or a promis-
sory note. When a debt is once shown to have existed,
there is no presumption of law or fact that it was paid
at or before maturity. Hence, when the plaintiff makes
proof that the debt sued upon once existed, and of the
fact that the day of payment has passed, the breach is
presumed from the facts proven. Possibly it would be
more accurate to say that, when the debt has been
proven to have once existed, it is presumed to continue
until its payment or discharge in some way is shown.
The burden of pleading and proving this is upon the
defendant. We have this every day in suits on promis-
sory notes. The note being evidence both of the debt
and the day of payment, the plaintiff makes out a
prima facie case simply by introducing the note in evi-
dence. If the day of payment is passed, the breach is
presumed. At common law, before the enactment of
the statutes of limitations, the debt was not presumed

to have been paid until 20 years had elapsed since the debt was due and payable, without payment of interest. Even then the presumption was rebuttable. So, then, the burden of proving that the debt had not been paid did not devolve upon the plaintiff until 20 years had elapsed since maturity and without the payment of interest. Since the enactment of the statutes of limitations, the presumption that the debt has been paid, when proven to have once existd, does not arise until the period fixed by the statute has elapsed, which, in the case of an open account, is three years, "the time to be computed from the day of the last item of the account, or from the time when by contract or usage the account is due." After the time prescribed by the statute has elapsed, the law conclusively presumes the debt to have been paid. To get the benefit of the statute, however, it must be specially pleaded; but, until the debt is barred by the statute of limitations, there is no presumption that it has been paid.

In Jones on Evidence (2d Ed.) § 65, the law is thus stated: "By the common law there was no stated or fixed time for the bringing of actions. The law was always open. Satisfaction was never presumed. As statutes of limitations were from time to time enacted, judges both in the courts of law and chancery by a kind of judicial legislation gradually extended the principles involved in such statutes by analogy to cases which, though not within the letter, were yet within the spirit, of the law. Although the courts recognized the principle that when a debt is shown to exist it should be presumed to continue until payment is shown, yet they held that the payment of a debt may be inferred or presumed from a failure to make demand for a long period of time, and from other circumstances apparently inconsistent with the continuance of the

debt." Same book, section 67: "From lapse of time alone, this presumption can never arise, unless the full period of 20 years has expired." Such was the rule at common law, and it remains unchanged here, except that our statute of limitations makes the time shorter and the presumption conclusive. The comon-law rule still obtains to its full extent in cases where the statute of limitations does not apply.—*Phillips v. Adams,* 78 Ala. 237; *Alston v. Hawkins,* 105 N. C. 3, 11 S. E. 164, 18 Am. St. Rep. 874, and notes at end of opinion. As to the burden of proof on the issue of payment, the law is correctly and well stated in 22 Am. & Eng. Encyc. of Law (2d Ed.) p. 587, as follows: "The general rule is well settled that payment is an affirmative defense, and will not in the first instance be presumed; but, after the antecedent existence of the debt has been proved by the creditors, the burden of proving its discharge by payment is upon the debtor or person alleging the payment"—citing 18 cases from the Alabama Reports, as well as cases from the United States Supreme Court, and numerous cases from the reports of 32 other states.

The case of *Great Western R. R. Co. v. Bacon,* 30 Ill. 347, 83 Am. Dec. 199, cited in the opinion, certainly does not militate, in the least, against my contention in this case, but is in exact accord with it. It was there held that the one holding the affirmative side of the issue had to prove his contention. The case of *Van Giesen v. Van Giesen,* 10 N. Y. 316, cited in the opinion, holds exactly with my contention. In that case the reporter states the case as follows: "The complaint in this cause was upon a promissory note made by the defendants, and alleged 'that they have not paid the same, but are justly indebted to the plaintiff therefor.' The defendants' answer alleged 'that on or about the 10th day of August, 1849, they paid to the plaintiff the pro-

[Pollak v. Winter.]

missory note mentioned in the said complaint.' No reply was made to this answer. The cause was tried before a referee, who decided that the fact of payment did not stand admitted upon the pleadings. Judgment was therefore rendered for the plaintiff, and was afterwards affirmed at a General Term of the Supreme Court in the Seventh district (12 Barb. 520). From this judgment the defendants appealed to this court." The case was affirmed. The opinion simply holds that upon the issue thus made the burden was upon the defendant to prove payment. The case of *McKyring v. Bull,* 16 N. Y. 297, 69 Am. Dec. 696, was a suit for work and labor done, just as in this case, and the court after a most thorough discussion of the law reached the same conclusion that I have reached in this case. I should like to quote at length from this decision; but, owing to the length of this opinion already, I shall content myself with citing it. It gives the history of the law on this subject. There remains but one other citation, and that is 16 Encyc. of Pl. & Pr. 174-179, and I will dismiss this with the observation that the author must have worked overtime and have gotten his legal principles badly mixed up—must have had a "brain storm."

In my opinion, the judgment of the court below should have been affirmed.