181 So. 96

**KIRKLAND v. KIRKLAND.**

**8 Div. 832.**

Supreme Court of Alabama.

April 21, 1938.

Rehearing Denied May 19, 1938.

Street & Orr, of Guntersville, for appellant.

P. W. Shumate, of Guntersville, for appellee.

BROWN, Justice.

This litigation originated by bill filed by the appellee, Emmett Kirkland, against his wife, Erma, ostensibly for divorce, but as subsequent events show, its major purpose was to draw in question, set aside, and annul a postnuptial settlement between the parties, entered into on March 2, 1935, only twelve days before the bill was filed.

The postnuptial agreement of settlement recites, inter alia, that:

"Whereas the parties to this agreement are husband and wife and whereas they have found it impossible to live together in peace and harmony and they agree that it is to their mutual benefit and desire to separate:

"And, whereas they desire to settle their property rights and the question as to the custody of their children peaceably and without litgations as follows:"

The terms of the settlement, set out in the agreement in full, was that Kirkland agreed to pay his wife $300, which was paid, and an additional sum of $700 in three annual installments of $233.33 each, "in lieu of all rights of maintenance, support and alimony," in consideration of which the wife "released, remised and quitclaimed unto" the husband "all her right title and demand and interest in or to any and all of the real and personal property now owned by" the husband.

"Said estate hereto referred to as one hundred twenty (120) acres of land in Marshall County, Alabama," described in the agreement; "And also two hundred thirteen (213) acres of land belonging to the party of the first part [Emmett Kirkland] located in Logan County, Arkansas."

It was also stipulated:

"And to secure the prompt and punctual payment of the said above mentioned sum of Seven hundred & 00/100 ($700.00) Dollars as herein above set forth the party of the first part does hereby grant bargain sell and convey unto the party of the second part a lien against the lands herein above described and does also agree to pay the party of the second part a reasonable Solicitors' fee for the enforcement and collection of the sum aforesaid if the party of the first part defaults in the prompt payment of the same as the same falls due.

"Second: And Whereas, the parties to this agreement have four children, namely: Melton Kirkland, age nine years, Alton Kirkland, age seven years, Luther Kirkland, age four years, and Leon Kirkland, age two years, and they do mutually agree that said children shall remain in the custody of the party of the first part until such a time as the party of the second part may provide herself a suitable home when it is here mutually agreed that Melton Kirkland and Leon Kirkland may be committed to the care and custody of the party of the second part and it is mutually agreed that either party to this agreement shall have the right to see the children committed to each others custody under this agreement at their respective homes at reasonable times and hours.".

The agreement was executed by the parties and duly acknowledged before a notary, as in case of deed, with separate acknowledgment of the wife, and filed for record and recorded on March 4, 1935, in the office of the judge of probate of Marshall county.

The grounds upon which the original bill as amended seeks relief is stated in the bill as follows: "Complainant further avers that shortly after the signing of the contract and notes referred to above he learned that Respondent was, at the time said contract and notes were signed and for a long time prior thereto, committing acts of adultery with one Tom Hill and that Respondent had kept such acts of adultery hidden from Complainant and at the time he signed said agreement for Respondent to have the custody and control of the two children and also at the time he signed the notes payable to Respondent he was ignorant of the fact that Respondent was guilty of misconduct in acts of adultery with the said Hill."

The defendant, Erma Kirkland, after filing answer to the bill as amended, controverting and specifically denying its material averments, by leave of the court, filed an original bill in the nature of a cross-bill, alleging fraud and collusion between the original complainant, James A. Kirkland, and Gordon Gilbreath, to deprive the defendant of her lien under said postnuptial settlement agreement, through the fraudulent foreclosure of a previously paid mortgage making the said complainant, James A. Kirkland, and Gordon Gilbreath, parties defendant to the cross-bill, praying for the enforcement of said agreement and the lien against the property created thereby, and a sale of the property for the satisfaction of said indebtedness, and a cancellation of said fraudulent foreclosure. The cross-bill was answered setting up the foreclosure for an alleged indebtedness of eleven hundred and some odd dollars, the purchase by Gilbreath at the foreclosure sale, and subsequent reconveyance of the property to James A. Kirkland.

On final hearing, on pleadings and proof taken by depositions, the court entered a final decree dissolving the bonds of matrimony existing between the complainant, Emmett Kirkland, and his wife, Erma; awarded "the permanent custody of the minor children set out by name" in the bill to the original complaint; canceled and held for naught the postnuptial settlement and the notes given to secure the deferred payments thereunder; dismissed the wife's original bill in the nature of a cross-bill, seeking to enforce the postnuptial settlement and the cancellation of the alleged mortgage foreclosure; and, "in lieu of all claims of whatsoever nature and kind said Erma Kirkland may have against Emmett Kirkland or his estate the said Emmett Kirkland is to pay her the sum of one hundred and No/100 Dollars and is to pay the further and other sum of fifty and No/100 Dollars to her solicitor, O. D. Street for solicitor's fees in said cause."

The evidence shows that the said Emmett and Erma were married in Logan county, Ark., in 1924, where Erma lived with her people; she being at the time eighteen years of age, and he thirty years of age. Soon after the marriage, Emmett brought his girl wife to Alabama, settling on Gunters Mountain in Marshall county, among his kin, in a sparsely-settled community, living with or in close proximity to Emmett's parents, where the family consisted of the father, mother, and maiden daughter, named "Lovey," Emmett's sister. Emmett purchased a tract of land consisting of 120 acres from his father and built a house of some sort thereon; his home being near the parental residence. The Hills of the neighborhood appear to be intimates of the Kirkland family. Emmett and Erma lived here for eleven years, during which time four children were born to them, all boys, from two to nine years of age at the time of the separation. In the eleven years Erma visited her people in Arkansas twice; in 1929 and 1934.

The evidence goes to show that the atmosphere of the home, because of the interference and influence of Emmett's "folks," some of whom are referred to in a letter written by Erma to Emmett, after the separation, as "Lou," "Old John," and "Love," was turbulent, produced disagreements, bickerings, conflicts, and quarrels between Emmett and his wife, and finally led to their separation and the postnuptial agreement. Immediately after this agreement was entered into, Erma left the home and commenced preparation for her departure to Arkansas.

Tom Hill, who appears to have been the owner of an automobile, and who at the request of Emmett and Erma carried them to Guntersville to have the agreement prepared, after the separation, assisted Erma in making preparation for her departure to her former home in Arkansas, by carrying her to Guntersville to have the agreement and notes filed for record, to New Hope and Huntsville to procure a suit case, and returning her to the friendly home of Esquire Renzo Vann, where she stayed the few nights that she remained in that community. On most, if not all of these occasions, she was accompanied by a sister of Tom Hill.

The circumstances attending appellant's preparation to return to her former home in Arkansas and her people, and the assistance Tom Hill gave her by the use of his automobile and their contacts incident thereto, and opinion evidence as to the reputation of Hill, his sisters, and appellant, given by a few of the complainant's intimates and friends, is the only evidence offered to support the serious and damaging charges made in the bill of the adulterous relations between appellant and Hill.

The evidence shows that up to the time of the execution of the postnuptial settlement, the character of appellant had not been questioned, and the testimony ques-

tioning her character when sifted by cross-examination appears colorless and without probative force.

The alleged adulterous relation is refuted by the testimony of the appellant and Hill, and their testimony corroborated by the evidence of Esquire Vann and others, and evidence going to show that Hill and his sisters were intimates of the Kirklands, rebuts every reasonable inference or conjecture of wrongdoing between appellant and Hill.

■ Therefore, after full consideration of the evidence, we cannot affirm its sufficiency to convict the appellant, Erma Kirkland, of the charge of adultery as alleged in the bill. Le May v. Le May, 205 Ala. 694, 89 So. 49; Morrison v. Morrison, 95 Ala. 309, 10 So. 648; Scott v. Scott, 215 Ala. 684, 112 So. 218; Brown v. Brown, 229 Ala. 471, 158 So. 311; Windham v. Windham, 234 Ala. 309, 174 So. 500.

There is another infirmity in the complainant's case. It not only appears in the evidence, but on the face of the bill, that its filing was not motivated so much by the desire to dissolve the marriage bonds, as it was to avoid the obligations assumed by the complainant in entering into the postnuptial settlement agreement which fixed a lien on his property as a security for the payment of the balance which he agreed to pay thereunder.

■ The bill was filed against the wife as a nonresident, immediately after she had returned to her former home and before she could set up and establish a home for herself and children, whose custody was given to her in the agreement. And, as the evidence shows, for the purpose of obstructing the enforcement of said lien on the property, in the event the complaint was unsuccessful in securing its cancellation, complainant, the respondents, James Kirkland, and Gilbreath, fraudulently fabricated a mortgage foreclosure and conveyance of the property to said James Kirkland, and, when called upon on the witness stand to state the amount of the alleged mortgage debt, evasively refused to state the facts, and referred to the fabricated mortgage foreclosure as the evidence on which they relied to sustain the transaction.

■ It is well settled that a failure to produce evidence within a party's control or knowledge, when called upon to do so, raises a presumption that it would operate against him, and justifies every intendment in favor of his adversary. Mordecai v. Beal, 1839, 8 Port. 529; Blakey v. Blakey's Heirs, 9 Ala. 391; Congregational Church at Mobile v. Elizabeth Morris, 8 Ala. 182; Patterson v. Vest, 216 Ala. 312, 113 So. 59; International Harvester Co. et al. v. Elgin Williams, Sr., 222 Ala. 595, 133 So. 275.

It was admitted by the complainant that he told his wife "to get out and hunt her a job," and that this with other disagreements and bickerings led up to the execution of the separation agreement, and at the time it was entered into the parties contemplated an immediate separation.

■ To adopt the utterances of the Arkansas court, "In this country the courts, as a general rule, have enforced covenants and promises in deeds of separation relating to the maintenance of the wife and property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into, or immediately follows." Bowers v. Hutchinson, 67 Ark. 15, 24, 53 S.W. 399, 402; McConnell v. McConnell, 98 Ark. 193, 136 S.W. 931, 33 L.R.A.,N.S., 1074; Merchants' Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335; Rash v. Bogart et al., 226 Ala. 284, 146 So. 814; Wyatt v. Wyatt et al., 81 Miss. 219, 32 So. 317; B.R.C.L. 1355, § 398; 30 C.J. 1058, §§ 833–853.

■ Under the authorities, the consideration stated in the agreement of settlement was sufficient to sustain it, and no reason appears in the evidence why it should not be enforced.

The decree of the circuit court, therefore, in so far as it dissolves the bonds of matrimony between Emmett Kirkland and Erma Kirkland, is reversed, and one here rendered denying such relief. The decree, in so far as it allows the appellant $100, and $50 solicitor's fees, is affirmed as an allowance of temporary alimony and solicitor's fees.

The decree, in so far as it dismisses the original bill in the nature of a cross-bill filed by the said Erma Kirkland, is reversed, and one here rendered canceling, setting aside, and holding for naught the alleged mortgage of September, 1926, from Emmett Kirkland to James A. Kirkland, recorded in book 90, record of deed 223, office of judge of probate, Marshall county; the foreclosure thereof, and the deed executed thereunder to the respondent, Gilbreath; and the deed from Gilbreath to

James A. Kirkland of date April 15, 1935, covering and embracing the northwest ¼ of the northeast ¼, Section 30, Township 6, Range 3 East, and the southwest ¼ of the southeast ¼ of section 19, township 6, range 3 east, and containing 80 acres more or less, in Marshall county, Ala., and the register of the circuit court is directed to enter such cancellation upon the record of same.

And a decree is here rendered declaring and enforcing the lien created by the post-nuptial settlement agreement between Emmett Kirkland and his wife, Erma Kirkland, executed on the 2d of March, 1935, and recorded in book 128, record of deeds, in the office of the judge of probate of Marshall county, on the 4th day of March, 1935, embracing and covering the northwest ¼ of the northeast ¼ of section 30, township 6, range 3 east; the southwest ¼ of the southeast ¼ of section 19, township 6, range 3 east; and the southeast ¼ of the southwest ¼ of section 19, township 6, range 3 east, all lying and being in Marshall county, Ala.

The cause is remanded to the circuit court for a decree of reference to ascertain the amount of the indebtedness, when due and to become due, and for an appropriate decree for the sale of said property, and such other orders and decrees as may be necessary to secure to the said Erma Kirkland her rights under said contract.

The costs of the appeal and the costs of the suit are taxed against appellees.

Affirmed in part, and in part reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.