49 So.2d 138

**ADAMS CONST. CO., Inc., v.
ADAMS et al.**

6 Div. 921.

Supreme Court of Alabama.

March 30, 1950.

Rehearing Granted June 22, 1950.

Further Rehearing Denied Dec. 7, 1950.

Wm. S. Pritchard, Victor H. Smith and Pritchard & McCall, all of Birmingham, for appellant.

Morel Montgomery and Atwell J. Brown, of Birmingham, for appellees.

PER CURIAM.

After full consideration of the record in this case we are of the opinion that the verdict of the jury was contrary to the great weight of the evidence and that the court erred in overruling the defendant's motion for new trial. For this error the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

All the Justices concur except GARDNER, C. J., not sitting.

BROWN, Justice (specially concurring).

The appellees Clarence E. Adams and Stewart C. Holmes, suing as a partnership doing business as "Adams and Holmes" brought this action of common assumpsit against Adams Construction Co. Inc. to recover the sum of $2558 paid by George-Cahill Co., a corp., to the defendant on Oct. 22, 1947, in satisfaction of an indebtedness accruing under a contract resulting from proposal in writing appearing on its face to be signed by "Adams Construction Co. by C. E. Adams," who as the undisputed evidence shows was the vice president and general manager of the proposee at the time, "To furnish all labor and material to construct the following items on the Arlington Park Apartments: 1. All sidewalks (4″ thick); 2 Curb (length of back of buildings only); 3 Concrete Drives (5″ thick); 4 Paving (4″ Slag Base 1½″ Asphalt Top); 5 Grading (Leveling grounds only). (Does not include any excavation or fill that might have to be bought). All of the above items for the sum of..... $2,558.00."

Following the signing by Adams was the following notation and signature: "It is understood and agreed that above described work to be done in accordance with plan and specification submitted. /x/ Floyd George /s/ C. E. Adams."

Said proposal purporting to be made by the defendant through Adams and accepted by Floyd George for the George-Cahill Co. had written at the head thereof: "Adams Construction Company, Birmingham, Alabama, Phone 6-6841; 307 Protective Life Bldg. August 21, 1947."

The complaint consisted of two counts "A" and "B", the first in substance and legal effect the common count for money had and received by the defendant for the use of the plaintiff on "October 22, 1947," and the second, Count "B" claimed a like

sum due from the defendant to the plaintiff "by account."

The defendant pleaded the general issue, special pleas 3 and 4 and plea 3 as amended and 5, the last two being pleas of set off for material and labor of defendant used by the plaintiff in performance of work on George-Cahill Co. project.

The court sustained the plaintiff's demurrer to plea 4. The correctness of this ruling is challenged by the first assignment of error. The facts stated in said plea were all admissible under the plea of the general issue and testimony tending to show these facts was allowed as evidence. If error intervened in this ruling it was error without injury. 5 Mayfield's Digest, p. 453, §§ 254, 255, 256 and authorities cited.

The plaintiff offered in evidence the written proposal, stated above and its acceptance, identified by plaintiff's witness Murray Cahill, the president of the George-Cahill Company, whose office was in the Massey Building, who further testified that the George-Cahill Company entered into the contract with Adams Construction Company in August, 1947. That when the contract was entered into he did not know anything about the Adams Construction Company, had never heard of them, and did not know who composed the Adams Construction Company. That the completion of the work under the contract was delayed for some reason, and that he wrote and mailed to the Adams Construction Company a letter asking them to perform the contract, and Mr. Wainwright, who the evidence shows was the president of Adams Construction Company, came to see witness concerning this contract and Wainwright told witness to send the check in payment of the work when completed to the Protective Life Building address, and he sent checks payable to Adams Construction Company in the amount of $2558 and that said checks witness is "sure", have been cashed.

The witness on cross-examination identified a copy of the letter dictated by witness "transmitting" the checks totaling $2558 dated October 31, 1947, addressed to "Adams Construction Company, 307 Pro-tective Life Bldg., Birmingham, Alabama," stating that the total sum represented "payment in full of grading contract on Arlington Park Apartments dated August 21, 1947" /s/ George-Cahill Co. Inc.

This witness identified copy of letter which he dictated as president of George-Cahill Company and sent by registered mail to "Adams Construction Co., 307 Protective Life Bldg., Birmingham 3, Ala." advising that on October 24, 1947, George-Cahill Co., was being penalized by the contractee for failure of addressee to complete the work under said contract, and unless same was completed by October 29, 1947, the writer would expect reimbursement of any penalties suffered.

Witness testified that said letter was written before he talked to either Dean (the secretary) or Wainwright (president of Adams Construction Company); that on this letterhead "307 Protective Life Building" was in witness' handwriting; that the only contract that George-Cahill Company had for the work at Arlington Park Apartments was with the Adams Construction Company, that Geroge-Cahill Company did not contract with Adams & Holmes, a partnership, that George-Cahill Company contracted with Adams Construction Company to do the work evidenced by the contract in evidence and George Cahill Company paid Adams Construction Company for doing the work.

On redirect examination witness testified, in short, that George negotiated the contract, and whether or not he knew about the corporation—the Adams Construction Company on the day it was signed witness did not know, that witness learned that there was such entity as Adams Construction Company when Mr. George turned the contract into the office, but George did not tell him it was a corporation.

Stewart Holmes, one of the plaintiffs testified that the first time he and Adams discussed forming a partnership and going into business as a firm or partnership, was on the Cahill job and they intended to form this partnership and call it "The Adams Construction Company." That "Mr. Adams knew Mr. George, whom we were going to do the work for. That

it was intended that he would be more active in the company than myself." That he, Holmes, drew up the contract on the typewriter and Adams signed it; and the contract was accepted by "Cahill-George." That witness supervised the work, and was on the job during "the biggest part of the time, that he paid the labor by his personal checks, and paid for the material on the job. That no machinery or equipment owned by the Adams Construction Company, a corporation, was used on the job. That a roller belonging to witness was used, that "patrol" and a small bulldozer leased from "Oliver & Simpson" was used. That the whole work was done with hand labor and witness' equipment. That Adams Construction Company, a corporation, did not pay for material or labor used on the job. That witness and "Mr. Adams have not been paid for this job."

On cross examination Holmes testified that the partnership was formed between himself and Adams "actually at the time I sat down and wrote the contract out as Adams Construction Company when we formed the partnership. * * * After we did this George-Cahill job and understood it did conflict with Adams Construction Company, a corporation, we changed it to Adams & Holmes."

Holmes further testified that the partnership of Adams & Holmes, was formed when they opened a bank account the latter part of October. That the plaintiffs were doing business as Adams & Holmes at the time the work on the Arlington Court Apartment was done. The witness further testified "we didn't make the name Adams-Holmes until we had started the job for Cahill and George."

Considerable testimony and evidence in the form of payrolls of Adams-Holmes Construction Company and checks were offered, and was before the jury.

The defendant offered evidence tending to show that equipment, fuel oils, skilled employees and common laborers in the employ of Adams Construction Company, under the control of Adams, its vice-president and general manager and Blevens, his foreman, was shifted to and used in the George-Cahill job.

The evidence is without dispute that Clarence Adams was a stockholder in, vice-president of and general manager for Adams Construction Company, Inc., authorized to and was engaged in the business of contracting for work such as was done on the George-Cahill Company job; that J. M. Wainwright was one of the corporators and the president of the corporation; that W. K. Dean was also a corporator and the secretary thereof. That the offices of said corporation at its formation and since have been in Protective Life Building, in Birmingham.

The evidence tends to show that the officials of the said corporation, other than Adams, had no knowledge of the activity of Adams and Holmes in respect to the George-Cahill Company contract until it received the letter complaining of the lagging of the work on said property and that it through Wainwright moved to finish the work. That the checks in payment of the contract price were claimed, received and cashed by the corporation, through Wainwright, the president of the corporation.

There is absence of evidence showing or tending to show that the defendant purchased on promise to pay therefor, or received from plaintiffs under any circumstances equipment, material, services, labor or any other commodity for its use, or that the corporation or its officers or agents, other than Adams, had any knowledge of the activities of the plaintiffs until after said registered letter was received at the office of the Adams Construction Company in Protective Life Building. There is no evidence showing or tending to show that plaintiffs demanded payment from George-Cahill Co. or that they gave them notice not to pay defendant.

To authorize a recovery under count "B" of the complaint the plaintiffs had the burden of showing privity of contract created by express promise, or showing facts from which the law would imply such, and a breach of such promise. Pollak v. Winter, 166 Ala. 255, 51 So. 998, 52 So. 829, 53 So. 339, 139 Am.St.Rep. 33, and authorities cited in the majority opinion, 166 Ala. at page 257, 51 So. at page 999; Cook & Company v. Malone & Sons, 128 Ala. 662,

29 So. 653; Louisville & Nashville R. Co. v. Johnson, 128 Ala. 634, 30 So. 580.

The plaintiffs failed to meet the burden as to count "B"; and the court erred in refusing defendant's affirmative charge as to said count requested in writing and in proper form.

At the January term of this court in the year 1845 the court decided the case of Houston v. Frazier, an action for money had and received. The court speaking by the then Chief Justice observed: "The action for money had and received has been assimilated to a bill in equity; and it is said that whenever the defendant has received money, to which the plaintiff in justice and equity is entitled, the law implies a debt, and gives the action *quasi ex contractu*. Hence it has been held, that the plaintiff is entitled to recover, when he can show that the defendant has received money belonging to him under any fraud or pretense. * * * And there need be no privity of contract between the parties in order to support the action, except that which results from *one man having another's money*, he has not a right conscientiously to retain." Houston v. Frazier, **8** Ala. 81, 84. [Italics supplied.]

In a later case, Branch Bank of Montgomery v. Parish, this court stated the law to be: "It is true, there need not be an agreement between the parties, to enable the plaintiff to maintain this action, as many of the foregoing cases show, that then there must be a privity between the parties in the transaction out of which the action springs. It may arise from a tort, but a party may generally waive the tort and sue upon contract; in implied assumpsit." Branch Bank of Montgomery **v.** Parish, 20 Ala. 433, 434, 435.

In the case of Louisville & N. R. Co. v. Johnson, 128 Ala. 634, 30 So. 580, 581, an action for money had and received, it was observed: "To establish a right of action in assumpsit, the plaintiff was under the necessity of proving that there existed between itself and the defendant some privity of contract, * * * by express promise or by implication of law. * * * No fraud being imputed to the defendant,

his indorsement of the paper has effect only to evidence the assertion on his part of a right to transfer or collect the claim, together with the fact of transfer. Whether in collecting from the plaintiff the Louisville Banking Company was acting for itself, as the supposed transferee of the claim, or for the Pensacola bank is not clearly shown; but there is no evidence from which it can be inferred that it was acting for or on behalf of the defendant, or *that the plaintiff's money was paid, received or used for defendant's benefit*. The contrary inference would seem to arise from the fact that the Pensacola bank gave the credit to defendant on receiving [due] claim, which fact, being unexplained, may only indicate that as between the bank and the defendant a sale and transfer of the claim was intended.

"If the defendant is liable upon the theory that he sold property to which he had no title, the liability exists in favor of his vendee, who may be the Pensacola bank. The plaintiff is not privy to that transaction, and its recourse, if any, would seem to be upon the party who collected from it without authority." (Italics supplied.)

The defendant in that case had the affirmative charge in his favor resulting in judgment for him. That judgment was here affirmed.

There is not a scintilla of evidence in this case showing or tending to show that the defendant was guilty of fraud or "pretense." If there was fraud or "pretense" it was on the other foot. Certain it is that there was no evidence of actual privity between the plaintiffs and the defendant. Neither the plaintiff Adams nor George who actively participated in the execution of the contract between the Adams Construction Company and the George-Cahill Company testified as witnesses as to the facts within their knowledge. In the circumstances proven the burden was on the plaintiff to go forward with the evidence and remove every intendment of false pretense and dealing on the part of the plaintiffs in their association and doings in respect to the George-Cahill Company project as a basis for creating the necessary privity *as a matter of law,*

and in this the plaintiffs have failed to prove that the money paid to the Adams Construction Company, Inc. on the George-Cahill Company job *ex aequo et bono belongs to plaintiffs.* Adams, who acted as the agent of the defendant in the execution of the contract suing as plaintiff, failed to testify and subject himself to cross examination and his failure raised "a strong presumption of *indirection and attempted evasion*", which plaintiffs were required to remove by strong and convincing evidence. McGar v. Adams, 65 Ala. 106; Kirkland v. Kirkland, 236 Ala. 120, 181 So. 96.

As observed by Chief Justice Gardner in McGlaughn v. Pearman et al., "His failure to testify respecting these material statements, all within his knowledge, creates the inference he refrained from testifying because truth would not aid his cause, and justifies every intendment in favor of his adversary." McGlaughn v. Pearman et al., 245 Ala. 524, 527–528, 18 So.2d 80, 83.

I am, therefore, of opinion that plaintiffs have failed to make a case for recovery under Count A of the complaint and that the court erred in refusing to the defendant the general affirmative charge which it requested in proper form.

### On Rehearing.

#### PER CURIAM.

On original submission this cause was reversed and remanded on the stated ground that the verdict of the jury was contrary to the great weight of the evidence, and that the court erred in overruling the defendant's motion for a new trial. Mr. Justice Brown concurred specially, in which concurrence he expressed the opinion that the defendant was also due the general charge. On rehearing the majority of the Court, consisting of Justices FOSTER, LIVINGSTON, LAWSON and STAKELY, have reached the conclusion that our former opinion was erroneous. On rehearing Mr. Justice BROWN has extended his opinion, in which extension Mr. Justice SIMPSON concurs, and has expressed the view that the cause should be reversed on the additional ground that the trial court erred in its oral charge to the jury, as is set forth in the extended opinion.

However, the majority of the Court is of the opinion that the oral charge is not subject to the criticism directed against it and when the oral charge is considered as a whole, it correctly states the law of the case. Our conclusion is that the record is free of error and that the cause should be affirmed.

It therefore follows that the rehearing is granted, the judgment of reversal is set aside, and the judgment of the circuit court is affirmed.

Rehearing granted: judgment affirmed.

FOSTER, LIVINGSTON, LAWSON and STAKELY, JJ., concur.

BROWN and SIMPSON, JJ., dissent.

#### BROWN, Justice (dissenting).

The appellees in their application for rehearing make the following observation: "The Court in a 'Per Curiam' opinion holds that the verdict of the jury was contrary to *the great weight of the evidence* and that the lower court erred in overruling defendant's motion for a new trial. *The opinion does not attempt to point out wherein the* evidence was insufficient."

Murray Cahill, the first witness offered by the plaintiffs on the trial and for whose integrity and veracity they vouched, identified the contract between his firm and the Adams Construction Co. negotiated by his associates Floyd George and C. E. Adams, vice president and general manager of the defendant corporation, and in short testified that the work and labor done and material furnished was furnished and performed under said contract. That when performance lagged and his firm was threatened with penalty for delay, he notified the defendant by registered letter addressed to defendant's address "307 Protective Life Building, Birmingham, Phone 6–6841." That Wainwright, the president of the defendant corporation, immediately contacted George-Cahill Co., finished the work and instructed the witness to send the check to defendant at its post office address

stated above. This was done, the check was cashed by defendant and the transaction closed. His testimony was positively to the effect that George-Cahill had no contract with the partnership of Adams & Holmes and had no dealings with them. This evidence made a clear case for the defendant and without doubt if the case had stopped there, it was due the affirmative charge.

Stewart Holmes, one of the plaintiffs, testified in short that the first time he and Adams discussed forming a partnership and going into business as a firm or partnership *was on the Cahill job* and they intended to form this partnership and call it "The Adams Construction Company." That "Mr. Adams knew Mr. George, whom we are going to do the work for. That it was intended that he (Adams) would be more active in the company than myself." That he (Holmes) drew up the contract on the typewriter and Adams signed it and the contract was accepted by George-Cahill.

On cross-examination the plaintiff Holmes testified that the partnership of Adams & Holmes was formed "actually at the time I sat down and wrote the contract out as Adams Construction Company. * * * That after that we understood it did conflict with Adams Construction Co. a corporation, we changed to Adams & Holmes." He further testified that "the partnership of Adams & Holmes was formed when they opened a bank account the latter part of October." He further testified that "plaintiffs were doing business as Adams & Holmes at the time the work on the Arlington Court Apartments was done. We didn't make the name Adams & Holmes until we had started the job for George-Cahill." Holmes testified that he was on the George-Cahill job most of the time and supplied the material and equipment and paid the labor out of his private account.

The defendant offered evidence going to show that material, labor and equipment was shifted by Adams through his foreman Blevins who was in charge of material and equipment of defendant to the George-Cahill job.

Neither the plaintiff Adams nor George, the other participant in making the contract, testified in the case.

In view of these facts, we are of the opinion that the motion for new trial should have been granted. It is, to say the least, unreasonable to think that business men of the experience of Adams and Holmes would have on the spur of the moment made a contract which on its face directly conflicted with the name and business of another firm known to them to exist and meanwhile one of the plaintiffs (Adams) being supposedly the dutiful employee and officer of defendant, whose interest it was his duty to protect. These circumstances call on the plaintiff Adams *to give the court and jury the facts within his knowledge* and his failure to do so created a presumption against him. McGlaughn v. Pearman, 245 Ala. 524, 18 So. 2d 80; Kirkland v. Kirkland, 236 Ala. 120, 181 So. 96; McGar v. Adams, 65 Ala. 106.

I perceive another fatal error to avert affirmance of the judgment. In the oral charge the court instructed the jury:

"Where one is an agent of a corporation, or an officer of a corporation, there is a fiduciary relationship established between the agent, or the employee, or the officer, to exercise good faith in his dealings, and as long as he is acting as that agent and the capacity functions, the relationship exists, and the law says that one acting in a fiduciary relationship must act in good faith and should not utilize his position at the same time to favor himself or some third party in whom he might be interested materially to the detriment of his employer or corporate relationship. The same is true of an agent.

*"On the other hand, the law does not require an officer of a corporation—forbid him from engaging in outside, independent activities so long as he acts in good faith with his employer and within the scope for which he is so employed."* [Italics supplied.]

The defendant in open court and before the jury retired reserved an exception to the italicized portion of said instruction. This exception was made the basis of as-

signments of error 23 and 24 and must be sustained. While the first part of the instruction quoted was sound, the part last quoted to which the exception was reserved pretermits the principal must have notice or knowledge of the agent's activities. The evidence in the case tended to show that the activities of Adams were secretive and without knowledge of his principal. Myers v. Ellison, 249 Ala. 367, 31 So.2d 353.

I am, therefore, of opinion that the application for rehearing should be denied.

SIMPSON, J., concurs.