(77 South. 388)

### BIRMINGHAM RY., LIGHT & POWER CO. v. BUFF. (6 Div. 436.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. MASTER AND SERVANT ☞258(3) — SAFE PLACE TO WORK—DANGERS OF FIRE—PLEADING—SUFFICIENCY.

The master being under the duty to exercise care commensurate with the character of the building to conserve the safety of its employés, the most general allegation of default in such duty is permissible.

2. MASTER AND SERVANT ☞258(10)—FAILURE TO PROVIDE FIRE ESCAPES—STATUTES—CONSTRUCTION.

Since Code 1907, § 7095, making any owner, proprietor, or manager of any manufacturing building more than two stories high who fails to provide good and sufficient fire escapes guilty of a misdemeanor, is penal, and must be strictly construed so as to lay the duty only on the owner, proprietor, or manager of the building; one suing for failure to provide a fire escape must allege that defendant was the owner, proprietor, or manager of building.

3. MASTER AND SERVANT ☞265(2)—INJURIES TO SERVANT—NEGLIGENCE OF SUPERINTENDENT—BURDEN OF PROOF.

One alleging that the servant's death was caused by the negligence of the master's superintendent has the burden of proving the fact of superintendence and of the superintendent's negligence.

4. MASTER AND SERVANT ☞279(5)—INJURIES TO SERVANT—NEGLIGENCE OF SUPERINTENDENT—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to show that servant's death resulted from negligence of superintendent, or that there was in fact a superintendent.

5. MASTER AND SERVANT ☞293(6)—INJURIES TO SERVANT — SAFE PLACE TO WORK — INSTRUCTIONS.

In action for servant's death in fire, requested instruction that Code 1907, § 7095, does not impose on the tenant of a building the duty of constructing an external escapeway, was properly refused, since such statute which makes guilty of misdemeanor any owner, proprietor, or manager of certain buildings who fails to provide a fire escape may apply to a tenant if actually an owner, manager, or proprietor.

6. MASTER AND SERVANT ☞286(3)—INJURIES TO SERVANT—SAFE PLACE TO WORK—QUESTIONS FOR JURY.

Whether the master was guilty of breach of common-law duty to furnish a reasonably safe place to work *held* for the jury.

7. MASTER AND SERVANT ☞289(3)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

Whether deceased servant was negligent in failing to avail himself of a fire escape, *held* for the jury.

Appeal from City Court of Birmingham; John H. Miller, Judge.

Action by C. A. Buff, as administrator of the estate of Washington M. Childress, against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The first count alleges that the defendant occupied in the conduct of its business a building three stories or more in height, not including the basement, and that on said day, while plaintiff's intestate was in the service or employment of defendant, and was engaged in or about the work for which he was employed by defendant to do in an upper story of said building, to wit, the fourth story thereof, said building caught fire, and as a proximate consequence thereof plaintiff was so burned, etc., that he was caused to fall, jump, or be thrown from said building to the street below, and to die. Plaintiff avers that defendant negligently failed to furnish said intestate with a reasonably safe place in which to do and perform the work for which defendant had employed plaintiff's intestate to do, and which he was engaged in or about doing in said upper story of said building on the occasion aforesaid, and as a proximate consequence of said negligence, the death of plaintiff's intestate was caused. The other counts sufficiently appear.

The charge made the basis of the seventh assignment of error is as follows:

The law does not impose on the tenant of a building the duty of constructing an external escapeway from said building.

Tillman, Bradley & Morrow, of Birmingham, for appellant. Harsh, Harsh & Harsh and Percy, Benners & Burr, all of Birmingham, for appellee.

SAYRE, J. The complaint in its several counts shows that the building, occupied by defendant and on the fourth floor of which plaintiff's (appellee's) intestate was engaged in and about the work for which he was employed by defendant, caught on fire whereby plaintiff—we presume the pleader intended to say plaintiff's intestate—was so burned, asphyxiated, or otherwise injured that he was caused to fall, jump, or be thrown from the building to the street below and to die.

[1] The first count, framed under the common law, declared upon defendant's negligent failure to furnish intestate with a reasonably safe place in which to do and perform the work for which he was employed. The only objection taken to the count in a manner requiring notice is that a reasonable degree of care in the premises alleged did not exact of defendant the duty of providing against the unforeseen and unusual danger of a fire. The old common-law rule, adopted of course with reference to the buildings of the time, was that where a

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

building was properly constructed for the use to which the occupant was putting it, and was not peculiarly exposed to fire from the character of the work carried on within it, the occupant was not required by any duty he owed to his employés therein to provide against so remote a contingency as the destruction of the building by fire otherwise than by the ordinary means of stairways, halls, doorways, and windows. Jones v. Granite Mills, 126 Mass. 84, 30 Am. Rep. 661; Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194. Pretermitting at this point statement as to how that rule has been affected by the appearance of the modern skyscraper and—apart from the provision of section 7095 of the Code—the alleged necessity for specially constructed fire escapes upon such buildings, it suffices to say that a degree of care to conserve the safety of its building for employés therein, whatever the character of the building, was required of defendant, and that under our system of pleading the most general allegation of default therein is permissible. The demurrer to the first count of the complaint was properly overruled.

Like considerations lead to the conclusion that the court did well to overrule the causes of demurrer alleged against the second and fourth counts of the complaint, which counts charged negligence under the superintendence clause of the Employers' Liability Act.

Count 5 of the complaint was evidently framed under section 7095 of the Code, which reads as follows:

"7095. *Fire Escapes.*—Any owner, proprietor, or manager of any hotel, office building, school building, store, or manufacturing building, which is more than two stories high, now erected, who shall fail for six months after the adoption of this Code to have securely fixed and conveniently arranged so as to be accessible to persons lodging in, working in, or occupying such building, * * * good and sufficient fire escapes or ladders for each story of said building, shall be guilty of a misdemeanor," etc.

The count alleges that "defendant in the conduct of its business" occupied the building, and "that the said building was an office building, store, or manufacturing plant, and was more than two stories high, and defendant had been in possession of and using said building for more than six months immediately preceding and up to the time of said death, and wrongfully failed to have securely fixed and conveniently arranged so as to be accessible to said intestate, who as such employé of defendant was working in or occupying an upper story of said building at the time of said fire in said building, good and sufficient fire escapes or ladders for the said story of said building on which said intestate was on the occasion aforesaid, and as a proximate consequence of said wrong said intestate's death was caused." The effort, we take it, and the parties so consider it in their briefs, was to charge a violation of the statute, and the point of

the demurrer is that the count fails to show that defendant was the owner, proprietor, or manager of the building.

[2] The statute, though it operates to provide a remedy for persons injured by a violation of its terms, is highly penal. While its purpose is not to be defeated by a construction too narrow and strict, yet it imposes a duty unknown to the common law, punishes a neglect of that duty criminally, and, it scarcely needs to be said, its condemnation cannot be extended by implication to persons who do not fairly come within its terms. Schott v. Harvey, 105 Pa. 222, 51 Am. Rep. 201. The intention of a penal statute must be found in the language actually used, interpreted according to its fair and obvious meaning. "It is not permitted to the courts, in this class of cases, to attribute inadvertence or oversight to the Legislature when enumerating the classes of persons who are subject to a penal enactment, nor to depart from the settled meaning of words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute." United States v. Harris, 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. The purpose of the statute is to conserve human life, and this it does, not by providing in terms for the compensation of any person injured as a result of a violation of its mandate, but by imposing punishment for its violation; and it may be observed that, except perhaps in the case of hotels, the command of the statute regulates conduct in its relation to the ownership, proprietorship, or managment of buildings, rather than the business carried on therein. The repeated use of the word "building" gives emphasis to this conception of the statute. If the Legislature had intended that tenants, each and every tenant, whether holding the lease of an entire building or a cubby-hole of an office on the seventeenth floor, should be criminally and otherwise responsible for the erection and maintenance of fire escapes, it seems strange that it did not use the term most readily at hand and which would have expressed the idea in all its fullness without leaving a doubt behind. Instead, it laid this duty on owners, proprietors, and managers, and the fair and obvious meaning of the language actually used must be observed in every administration of the statute. We do not intend to deny that a tenant may occupy a building in such circumstances as to become the owner, proprietor, or manager within the purview of the statute, but only to affirm that not every tenant or occupant is necessarily an owner, proprietor, or manager, and hence that the count should have alleged that defendant was the owner, proprietor, or manager of the building in question, or facts necessarily showing such to be the case.

[3, 4] On the evidence defendant was entitled to the general charge as to counts 2

and 4. These counts charge, under the second subdivision of the Employers' Liability Act (Code 1907, § 3910 [2]), that intestate's death was caused by the negligence of defendant's superintendent whose name, it is alleged, was unknown to plaintiff. There was no evidence of superintendence or that there was any superintendent. There was no evidence that superintendence of the building was delegated to any one. Appellee argues that from the size of the building and the nature of the business carried on therein the jury were authorized to infer that there was a superintendent. He also refers to the fact that one of defendant's witnesses, being asked whether he had ever made a report to his superior officers in reference to any accumulation of trash, or rubbish, or excelsior, or other inflammable material near the elevator shaft, answered that he remembered "reporting something once on that general order, that there was excelsior in the rear of the building on the first floor." Proof of the case alleged in these counts was necessary to a recovery under them, and the burden of proof rested upon the plaintiff. The circumstances referred to, very clearly it seems to us, furnished no sufficient basis for an inference that there was at the time of the fire which resulted in the death of plaintiff's intestate any employé of defendant to whom was delegated the duty of superintendence over the building. Appellee, to close this gap in his case, pushes his argument still further, and asserts that "if no one else had such a duty, defendant's general executive officer, to wit, the president, would have same cast upon him." But, obviously, this argument involves a failure to observe the wide distinction between the fellow-servant doctrine of the common law and the rule of the Employers' Liability Act. As we have before said, the declaration in these counts is under the act, and any recovery had on them must be properly referable to it, must be sustained by evidence of the material facts which were alleged in order to bring the case under the influence of the act. In the evidence shown by the record in this case, we repeat, the court finds nothing to sustain a finding that there was any negligence of any superintendent of the building occupied by appellant nor anything to exclude the conclusion that negligence, if found to exist, was the negligence of the corporate defendant or of a fellow servant of plaintiff's intestate. It follows hence that defendant should have had the general charge against these counts. "To hold otherwise would be to fasten liability on the master to the servant for that which is at most negligence of a fellow servant, having no greater power or authority than the servant who complains of the injury." This the statute does not authorize. Sloss-Sheffield Co. v. Green, 159 Ala. 178, 49 South. 301;

Sheffield v. Harris, 101 Ala. 564, 14 South. 357, and cases cited.

[5] There was no error in refusing the charge set forth in the seventh assignment of error. We have heretofore stated our opinion that the circumstances may show a tenant to be an owner, proprietor, or manager within the purview of the statute. The charge had therefore a tendency to mislead.

[6, 7] The court holds that the question as to defendant's alleged breach of its common-law duty to furnish a reasonably safe place —a duty that rested upon defendant without reference to the statute, though the statute measures the duty of all within its letter and purview so far as concerns the furnishing and maintenance of fire escapes or ladders—and the question as to the alleged contributory negligence of plaintiff's intestate in failing to avail himself of the fire escape that was provided, were questions for the jury.

Nothing more need be said. For the several errors indicated, the judgment must be reversed.

Reversed and remanded. All the Justices concur.

McCLELLAN, J. (concurring). While I concur in the conclusion that prejudicial error underlies the judgment in this case as well as in B. R., L. & P. Co. v. Milbrat, 78 South. 224,[1] my view of the proper construction of Code, § 7095, is not in accord with that inviting the approval of the majority of this court. This statute, section 7095, and the related section, 7096, are penal; and both must be strictly construed. 11 Mich. Ala. Dig. pp. 1117, 1118. There is no common-law duty to construct fire escapes on buildings of any type. The object of these statutes was and is to preserve and to conserve human life from fire. The means required and prescribed is fire escapes or ladders (section 7095) "securely fixed and conveniently arranged so as to be accessible to persons lodging in, working in, or occupying" buildings of the character described in the statute. When the statutes' prescription of the means, to the manifest end, are read in the light of common knowledge and everyday observation, it is apparent that the structures the authors of these statutes had in mind were fire escapes or ladders attached to the outsides of the buildings described in the statutes. 19 Cyc. p. 564. In short, the purpose was to require the construction of external means of exit from the buildings described. Obviously, stairways, or other internal means for going from floor to floor, would not meet the command of these statutes—sections 7095 and 7096—since walkways within buildings are not fire escapes as all men know. Such, in my opinion, being the object, and the means to effect it, together with the character of building as a unit, prescribed by the statutes, it remained

[1] Post, p. 368.

for the lawmakers to impose the duty to afford the means upon those who, under penalty for failure, should, within six months, make the addition of "fire escapes or ladders" to existing buildings of the described character or who should, under penalty for the omission, erect "fire escapes, or ladders" with buildings constructed after section 7096 became effective. This was undertaken to be done through the employment in both of these sections (7095, 7096) of three descriptive words, viz. owner, proprietor, manager; plainly of the units, the buildings described in section 7095. It is clear that neither occupancy of nor the business conducted in the buildings described were considerations in the mind of the lawmakers in prescribing those upon whom the duty and the penalty for its nonobservance were imposed or was to be visited. The duty was and is laid by these sections upon the owner of the building; the proprietor of the building; the manager of the building. These descriptive terms refer, manifestly, to those having control of the building in respect of its external structure. It was contemplated that the duty imposed should be exacted of those only who had or have the right to add "fire escapes or ladders" to the building. That the owner or proprietor of a building would have such right, and would, in consequence, be subject to the duty imposed by these statutes, is plain. Whether a person, firm, or corporation renting or leasing a building, the unit, is a manager within the purview of these statutes, must depend upon the character and legal effect of the contract with the owner or proprietor of the building in question.