74 So.2d 259

### CITY OF BESSEMER v. CLOWDUS.

6 Div. 372.

Supreme Court of Alabama.

June 17, 1954.

Rehearing Denied Aug. 30, 1954.

See also, 258 Ala. 378, 63 So.2d 355.

Ling & Bains, Bessemer, for appellant.

D. G. Ewing, Birmingham and Lipscomb
& Brobston, Bessemer, for appellee.

**PER CURIAM.**

This is an appeal from a judgment in favor of appellee as administratrix of the estate of H. W. Martin, deceased, against appellant for damages as the result of negligently causing decedent's death.

The negligence claimed was in allowing a defective and dangerous condition (a ditch) to remain in a public street of the city, into which plaintiff's intestate fell and caused his death. The street at that point was Fourth Avenue, extending westerly toward Tuscaloosa from Bessemer, and was one of the main arteries of travel, being federal highway No. 11. The street was eighty feet wide, the center thirty feet of which was paved, leaving twenty-four to twenty-five feet on each side unpaved. On the northern portion of the unpaved area the terrain was fairly level and graveled, and was used largely for parking. It was not set up as a sidewalk but was used by pedestrians. The point in question was between Twelfth and Thirteenth Streets, where the avenue crossed a creek which flowed in a natural channel. A concrete bridge over the creek formed a part of the paved roadway along the avenue. On the north side of the paved portion and about three and one-half feet from it, a concrete abutment extended parallel with the surface of the street being about one foot high, one foot thick and about sixteen feet long, and marked the location of the flow of the creek under the roadway. The bottom of the creek had a few inches of water running through jagged rock lying in its course, and was about sixteen feet below the surface of the street. The abutment had a wing extending diagonally from each end for four or five feet tapering down to the level of the surface. On each side of the channel a rock wall extended up from the bottom but did not reach the top. From Thirteenth Street toward the city, the pavement on Fourth Avenue was fifty-six feet from curb to curb, with a white way along its edge. There was a distinct narrowing of the paved roadway beyond Thirteenth Street west toward Tuscaloosa. At the Twelfth Street crossing there was a street light.

Deceased resided in Gadsden and was visiting his daughter. In years past he had made infrequent short visits to her. The daughter was the wife of Cliff Clowdus who conducted a barbecue stand just beyond Eleventh Street on Fourth Avenue, and they resided on the west side of Thirteenth Street. Deceased arrived on the afternoon of December 10, 1949, and that night ate supper at the barbecue stand, leaving it about ten o'clock to walk to his

daughter's residence. The night was dark and it was raining. Early the next morning (December 11th) his dead body was found in the channel of the creek. His body was in about the center of the channel and was lying parallel with the paved roadway with his hands stretched over his head. He had one large hole on one side of his head and one small hole on the other side, both being on the frontal part of it.

There were no lights, warning signals or barricades on either side showing the location of the channel of the creek. Photographs of the location were introduced in evidence and we have them before us. They aid very materially in considering the questions involved.

The first question earnestly insisted on by appellant is that it was due the affirmative charge.

The city does not contend that the street was not under its supervision and care, extending eighty feet in width as described above. The place where the body was found was not set up by the city for special use by pedestrians. But there was nothing to indicate that pedestrians were not expected to use the area extending from the edge of the paved roadway north to the edge of the right-of-way, and it was used by many. No other provisions were made there specially for use by pedestrians. There was a space of about three and one-half feet between the abutment and road pavement available for that purpose. The roadway was heavily traveled by motor cars of various sorts. North of the area there are some small business shops and negro residences.

The first feature of the inquiry is whether there was a dangerous condition, and then whether there was negligence on the part of the city in leaving it in that condition which proximately caused decedent's death. The bridge was built in the W.P.A. days of the depression, and supplanted a wooden bridge with guard rails. If it was dangerous, was it the duty of the city to remedy it? It was unquestionably dangerous as a glance at the pictures discloses.

In respect to the duty, it is said that a city "is not confined to keeping the mere bed of the way in proper condition, and one injured by a defect or obstruction outside the prepared part may still be entitled to recover, if the defect is so near the traveled part as to render its use unsafe". 63 C.J.S., Municipal Corporations, § 805, p. 126, note 31; City of Birmingham v. Young, 246 Ala. 650, 22 So.2d 169; City of Birmingham v. Cox, 230 Ala. 99, 159 So. 818. The principle has been thus analyzed in 56 A.L.R. 220:

"A number of cases lay down the rule that it is the duty of the traveler to remain within the wrought and traveled portion of the way, and that the municipality is not liable for injuries sustained by him if he departs therefrom voluntarily and without good cause. On the other hand, there is authority to the effect that, though the public authorities are not obliged to prepare the highway for travel to its full width, and though only a portion of its width has been so prepared, the public nevertheless has a right to travel over the whole width of the way as laid out, without being subjected to other or greater danger than may be presented by natural obstacles, or those occasioned by making and repairing the traveled path; and that it is not necessarily a good defense to a claim for damages if they were incurred by reason of obstruction upon the margin of the way. This line of authorities subscribes to the view that the municipality still has a right to control the whole width of the highway and is subject to a corresponding duty with respect to it, and must see that those portions outside of the traveled way are in such condition that a traveler using due care may pass without danger of accident."

The authorities cited by appellant merely emphasize and substantiate that analysis by the annotator. To the same effect is 25 Am.Jur. page 700, section 405.

The pictures show that the full width of the street had been improved,

though no part was specially designed for a sidewalk. It presents the appearance of being the only way of travel by pedestrians along that side of the street. It would be obviously unsafe to walk along the portion paved for vehicular traffic. We have no trouble in reaching the conclusion that the locus here in question was a dangerous place to persons walking along there at night, not familiar with the condition, or forgetful of it, and it had existed long enough for the jury to find that the city had notice of it and of its danger, and that it had not been remedied through negligence of the city.

The most serious question raised and one of much difficulty is whether this decedent accidentally fell in the ditch on this occasion or whether it was the result of foul play of some sort or some physical deficiency or suicide. There were no eye witnesses to it so far as the evidence shows. The question must be solved by reaching an inference from the evidence. There was no evidence tending to show robbery, nor was there evidence of any enemy possibly seeking revenge. There was no evidence of a purpose to commit suicide or reason for doing so, or of any physical deficiency or mental aberration.

■ Appellant relies upon the principle stated in Southworth v. Shea, 131 Ala. 419, 30 So. 774, 775, that when "Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur, where from the same proof the injury can, with equal probability, be attributed to some other cause. Such a condition is equivalent to an absence of evidence as to the true cause, and, when seen clearly to exist, imposes on the court the duty of determining, as a matter of law, against any right of recovery dependent upon the establishment of causal connection between the injury and its alleged cause".

■ The other aspect of the principle is thus stated: "As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence." This statement of the principle has been quoted until it has become a classic. Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665, 669; Georgia Power Co. v. Edmunds, 233 Ala. 273, 171 So. 256; Harbin v. Moore, 234 Ala. 266, 175 So. 264; Ingram v. Harris, 244 Ala. 246, 13 So.2d 48; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; McClinton v. McClinton, 258 Ala. 542, 63 So.2d 594.

Specifically here applied, it is whether the evidence points to the theory of an accident proximately resulting from that condition, indicating logical sequence of cause and effect in that respect, although there may be other plausible theories. We think it does point to the theory of an accident which resulted proximately from the dangerous condition referred to. Those circumstances are: the nature of the two different wounds on his forehead; the position of his body, with his hands above his head, when found, lying directly in the course he expected to travel; absence of familiarity with the dangerous place; that he was physically sound, with no evidence of mental defects; no evidence indicating foul play; the night was dark and rainy; the place had no warning barricades nor lights or signs indicating danger, nor other lights near by.

■ True some of those conditions are consistent with foul play but that does not make the theory of an accident pure speculation, when foul play would not probably have brought about those precise circumstances; whereas the theory of an accident would probably have done so. It was a question for the jury and not for the court, and the affirmative charge was properly

refused. This theory was applied in denying the right to the affirmative charge in Bromley v. Birmingham Mineral R. Co., 95 Ala. 397, 11 So. 341.

Assignment of error No. 3 is for the refusal of charge No. 15. The substance of that charge was given in charges Nos. 1 and 24. Appellant cites the case of McCalley v. Penney, 191 Ala. 369, 67 So. 696. In that case it was held not to be error to give the charge. But under Supreme Court Rule 45, Code 1940, Tit. 7 it is now usually not reversible error to refuse it. City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174.

Assignment of error No. 4 relates to the refusal of charge 18. The substance of this charge is included in charges 5, 14, 20 and 22, and therefore it was not error to refuse it, if it was not objectionable.

Assignments of error 5, 6 and 7 are based on the denial of a motion for a new trial on the insufficiency of the evidence to justify a verdict for plaintiff. The insistence is that there was no sufficient proof as to the cause of the death of plaintiff's intestate. But as stated above, it is a justifiable inference that his death was brought about by accidentally falling into the channel of the stream, as a proximate result of the dangerous condition negligently allowed by the city to remain in that condition. We need not repeat the circumstances leading to that result.

Assignment No. 8 is controlled by the principle we have here declared.

Assignment No. 9 is based on the refusal of the court to continue the trial to permit the defendant to try in the probate court its claim that letters of administration were improperly issued to plaintiff in Jefferson County because deceased resided in Etowah County, and that there was no authority of law or any reason for the probate court of Jefferson County to grant letters of administration on his estate. The petition for letters alleged that decedent was an inhabitant of Jefferson County. The motion for a continuance alleged that defendant had filed a motion in the probate court to remove the administratrix and to cancel her letters. But an inspection of our records shows that the probate court has overruled the motion to revoke the letters and that its judgment was affirmed on appeal to this Court, based on the principle that the city did not have such interest as to justify its' claim. City of Bessemer v. Clowdus, 258 Ala. 378, 63 So.2d 355. There was therefore no occasion for continuing the case to permit such a trial when the motion showed on its face that the movant could not sustain it. Other reasons for not reversing the judgment on account of the refusal to continue the trial of this case need not be considered.

Assignments 10 and 11 are based on the action of the court in overruling a demurrer to the one count of the complaint on the ground that it is duplicitous in alleging that defendant was negligent in causing the said defect, etc., or in negligently allowing said defect to be and remain, etc.

It is conceded of course that a single count cannot contain two separate causes of action. Sloss-Sheffield Steel and Iron Co. v. Smith, 166 Ala. 437, 52 So. 38; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97.

In Sloss-Sheffield Steel and Iron Co. v. Smith, supra, 166 Ala. on page 444, 52 So. on page 41, it is said: "One count may contain several distinct and independent averments, each of itself stating a good cause of action, provided it is the same cause of action in all the averments, and the count will be good on demurrer; and proof of any one of the independent averments constituting the cause of action will entitle the plaintiff to a verdict. He need not prove them all."

In the instant case there is only one cause of action, that is in negligently causing the death of plaintiff's intestate, either by negligently causing the existence of the dangerous condition or by negligently allowing it to remain in such condition.

It was held in Louisville & Nashville R. Co. v. Smith, 163 Ala. 141, 50 So. 241, and

396

in Alabama Great Southern R. Co. v. E. T. Davenport & Co., 195 Ala. 368, 70 So. 674, that a complaint using the alternatives here employed in a context of the same legal sort is not subject to demurrer for so doing.

Assignments 12, 13, 14, 15, 16, 21, 22, 23 and 24 relate to the action of the court in overruling objection as to the age, health and absence of physical defects of decedent. It is said that such evidence is not admissible in such a case except on a claim of contributory negligence, and that the evidence does not show contributory negligence. In Kurn v. Counts, 247 Ala. 129, 22 So.2d 725, the question was thus treated because that was the only issue in that case to which the evidence could relate.

In the instant case that sort of evidence is admissible in an effort to determine what was the cause of decedent's fall into the ditch, and also on the issue of contributory negligence which was embraced in the plea in short by consent. The circumstances show that to have been an issue. If he was negligent in not seeing or not heeding the danger, that was a complete defense to the negligent cause of action alleged.

Assignment No. 17 relates to the introduction of the claim alleged to have been filed with the city clerk as required by section 504, Title 37, Code, which, for a tort, must be presented to the clerk within six months from the accrual. Section 476, Title 37.

The objection was made that there was no proof that the notation on the claim "Received, City of Bessemer, 6/10/50. Frances C. Jones, City Clerk" was executed by the city clerk or was in her handwriting. But it is an instrument required to be filed with the clerk of the city (says section 504, supra), and presented to the clerk (says section 476, supra), and therefore the official entry of the clerk on it is sufficient evidence of its registry by her. Section 409, Title 7, Code; Polytinsky v. Patterson & Son, 3 Ala.App. 302, 57 So. 130.

Assignments of error 18, 19 and 20. Appellant offered to show by questions to plaintiff and by the written application for letters of administration by plaintiff, that she made the statement under oath that decedent was an inhabitant of Bessemer and died seized and possessed of property in Jefferson County. There was no conflict with the testimony of plaintiff that her father was a resident of Etowah County, Alabama. The offer was made to affect the credibility of plaintiff as a witness. The court permitted defendant's counsel to ask her if she did not make the statement in her application for letters that he was an inhabitant of Jefferson County. But refused to permit him to ask her in the presence of the jury whether she made written oath that her father died seized and possessed of real and personal property in Jefferson County, Alabama, consisting chiefly of a claim against the City of Bessemer, all of said property and real estate being worth $100.

The matter there inquired about, to which objection was sustained, was immaterial and did not conflict with her testimony. The court committed no error in that connection.

Assignment No. 25. There was objection to the statement made in argument by plaintiff's counsel as follows: "Now, gentlemen of the jury, the city has offered no explanation as to why they allowed this condition". The court overruled the objection. The argument is that it is improper to comment on the absence of evidence; that the jury must pass on the evidence offered and nothing else in making up their verdict.

We observe that this is not a comment on the failure to produce a witness when the evidence shows that he is accessible to both parties or that his evidence would be merely cumulative. For in that event such comment is not ordinarily permissible. Louisville & Nashville R. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760; Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451; City of Birmingham v. Levens, 241 Ala. 47(5), 200 So. 888.

But the failure of a party litigant to testify as to material facts known to him in a civil case when he is present in court, is subject to comment. Morris v. McClellan, 154 Ala. 639, 45 So. 641; McGlaughn v. Pearman, 245 Ala. 524, 18 So.2d 80.

That general rule is often qualified in its statement so as to apply when the facts are peculiarly within the knowledge of the witness. Alabama Power Co. v. Allen, 218 Ala. 416, 118 So. 662. See, also, Alabama Power Co. v. Talmadge, 207 Ala. 86(21), 95–96, 93 So. 548; Wheeler Motor Co. v. Stringer, 222 Ala. 494, 133 So. 10; Kirkland v. Kirkland, 236 Ala. 120, 181 So. 96; Waller v. State, 242 Ala. 1(5), 4 So.2d 911; Jarrell v. State, 251 Ala. 50, 36 So.2d 336.

It is emphasized in the cases that the argument is not objectionable when "no one quite so well as appellant was in position to deny and refute" the contention of plaintiff. Peck v. Henderson, 22 Ala. App. 541(6), 118 So. 258, 261, citing the Talmadge case, supra, to the same effect. And in civil cases when the defendant offers no evidence, it is competent for opposing counsel to comment on that circumstance. Cabaniss v. City of Huntsville, 217 Ala. 678(10), 117 So. 316.

In the instant case counsel for plaintiff simply called attention to the fact, which was true, that the defendant offered no evidence whatever as to why they allowed that condition (in the street to remain). The jury could find that it was dangerous of an extreme sort. If the city had any justification for letting it remain so for many years (since the days of the W.P.A.), it is in better position than any one else to make explanation. Negligence of the city in allowing it to remain was an issue. There is no error here appearing; and we find none in the record which is reversible so far as appellant has made claim.

The judgment should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.