96 So.2d 426

**HINTON & SONS**

v.

**James Clyde STRAHAN.**

**6 Div. 89.**

Supreme Court of Alabama.

June 27, 1957.

LeMaistre, Clement & Gewin, Perry Hubbard and H. Vann Waldrop, Tuscaloosa, for appellant.

deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, for appellee.

MERRILL, Justice.

Appellant, a partnership operating a dairy, appeals from a judgment against it in the sum of $12,500. The complaint that went to the jury consisted of one count which declared upon an alleged breach of the common law duty to furnish appellee, their employee, with a reasonably safe place in which to work. The count, after alleging that plaintiff was employed by the defendant, avers that plaintiff was manually milking one of appellant's cows in one of the stalls located in appellant's barn, and that appellant negligently failed to provide plaintiff with a reasonably safe place to do and perform the work for which he was employed, and that the cow plaintiff was milking ran upon plaintiff and knocked him into a cement gutter in said barn and, that as a proximate consequence of appellant's said negligence, plaintiff received many injuries.

The appellant pleaded the general issue in short by consent, and this included the pleas of assumption of risk and contributory negligence.

Assignments of error 2 and 3 assert error in the court's refusal to give the general affirmative charge without hypothesis (2), and the same charge with hypothesis (3). Appellant contends it was entitled to these charges under the assumption of risk doctrine, because it is urged that plaintiff's injuries resulted from either an ordinary or extraordinary risk of his employment, and that he continued in the employment with full knowledge of the conditions causing his

injury and with an appreciation of the danger therefrom.

The tendencies of the evidence most favorable to the plaintiff were that the cows were ordinarily milked by milking machines; but the one he was milking had recently freshened, and, upon instructions of one of his employers, George Hinton, Jr., the cow was being milked by hand. Plaintiff was sitting on a paint can, and the cow had a chain around her neck which was hooked to a chain which was fastened to a bolt in the wall of the barn. Plaintiff testified that he was furnished one helper and one milking stool, and that the helper was using the milking stool at the time of the injury. Witnesses for both plaintiff and defendant testified that at the time of the injury, prudent dairy operators in Tuscaloosa County with similar dairies provided wood or metal head stanchions for their cows which opened up, let the cow's head in and closed on her neck while she was being milked, and that these stanchions were better and safer than chains for securing a cow. On cross-examination of one of appellant's witnesses, it was adduced that it was dangerous to sit on a bucket to milk a cow, and that prudent dairy operators provided their employees with stools to sit on while milking. There was no evidence that plaintiff was familiar with the standards met by prudent dairy operators in Tuscaloosa County. His experience in dairy work was confined to this dairy where he had worked for over fifteen months prior to his injury.

■ We think the plea of assumption of risk on the part of appellee was properly submitted to the jury by the trial court who gave a full charge on the plea.

■ Likewise, we do not think the court should have granted the motion for a new trial on the ground that the verdict of the jury was contrary to the great weight and preponderance of the evidence.

■ Assignment of error No. 6 complains that the court erred in overruling defendant's demurrer to the complaint. The argued grounds of demurrer were that there were no facts alleged showing a causal connection between defendant's alleged negligence and plaintiff's alleged injuries. Under our system of pleading, the averment that the master negligently failed to furnish or provide a reasonably safe place to work is sufficient, and the most general allegation of default therein is permissible. Birmingham Ry., Light & Power Co. v. Buff, 201 Ala. 94, 77 So. 388; Ragland Brick Co. v. Bell, 197 Ala. 14, 72 So. 380; Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561, 62 So. 199; Smith v. Watkins & Donelson, 172 Ala. 502, 55 So. 611; Gray Eagle Coal Co. v. Lewis, 161 Ala. 415, 49 So. 859.

■ Assignments of error 4 and 5 predicate error upon the court's refusal to give charges 24 and 25, the effect of these charges being that the failure of defendant to furnish milking stools could not be a basis for recovery. It is sufficient to say that the charges were properly refused as being misleading or argumentative, in that each unduly singles out and emphasizes particular facts.

Assignment of error 1 is that the trial court erred in overruling appellant's motion for a new trial. We have already considered the grounds that the verdict was contrary to the weight and preponderance of the evidence.

■ It is next urged that appellee's counsel made references in argument that none of the four partners had taken the stand as witnesses to deny their liability to the plaintiff. Appellant objected to these references but the objections were overruled. In this action, the trial court did not commit reversible error. In Morris v. McClellan, 154 Ala. 639, 45 So. 641, 645, the court, speaking through Dowdell, J., said:

"* * * It has always been the rule in civil actions that the failure of a party to the suit, when present at the trial, to testify as to a fact in issue, furnished legitimate ground of com-

ment in argument to the jury by the opposite party. * * *"

To like effect, see Martin v. Davis, 224 Ala. 648, 141 So. 667; Wheeler Motor Co. v. Stringer, 222 Ala. 494, 133 So. 10. The issue in the instant case was whether defendant had furnished a safe place for plaintiff to work, and no member of the defendant partnership became a witness, and it appears that at least one of the partners, George Hinton, Jr., was present in court during the trial.

■ This general rule as to comment in argument on the failure of a party to testify has certain common sense qualifications. They are listed in 31 C.J.S. Evidence § 156 d, page 862. They include— where the testimony of the party is unnecessary, where he has no personal knowledge of the facts in issue, where such facts have been otherwise fully established by depositions, interrogatories or by testimony at a former proceeding, where he is unavoidably absent from the trial, where his mind is impaired or where he is incompetent as a witness. This court has recognized some of these qualifications. In McGar v. Adams, 65 Ala. 106, this court held that a party's failure to testify merely to support uncontradicted evidence, favorable to him, which his adversary introduces, did not give rise to the presumption of the imputation of withholding evidence. In other words, it was unnecessary for the party to testify.

In Pollak v. Davidson, 87 Ala. 551, 6 So. 312, it was held that no unfavorable presumption should have been indulged against the defendant when the testimony showed he had no knowledge of the facts and was in New York at the time of the trial.

Appellant cites the cases of Alabama Power Co. v. Allen, 218 Ala. 416, 118 So. 662, and City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259, in support of the proposition that "a party's failure to take the witness stand is not subject to comment unless it is first shown that the party is present in court and fails to divulge facts that are peculiarly within his knowledge and unknown so fully to any other witness."

In Alabama Power Co. v. Allen, supra [218 Ala. 416, 118 So. 664], it was said:

"While it is the rule in civil actions that the failure of a party to the suit, when present at the trial, to testify as to a fact in issue, is the subject of comment (Morris v. McClellan, 154 Ala. 639, 45 So. 641, 16 Ann.Cas. 305), this general rule has qualifications, and one is that the fact or facts which he fails to divulge or explain are peculiarly within his knowledge, and were not known so fully to any other witness (Wigmore on Evidence, §§ 287–289; Jones on Evidence [3d Ed.] § 21; 22 C.J. 123). * * *"

The sections cited from Wigmore repeatedly stress the fact that the same rule should apply to parties as to other witnesses. The section cited from Jones deals exclusively with calling witnesses other than a party. The citation from Corpus Juris does not support the qualification quoted from the opinion concerning matters "peculiarly within his knowledge." That phrase is used in the cited authorities with reference to a party's witnesses and not to the party himself.

But it is clear that a different rule obtains in Alabama. This distinction is made in Martin v. Davis, 224 Ala. 648, 141 So. 667, written by Chief Justice Anderson, the author of the opinion in Alabama Power Co. v. Allen, supra, which case was cited in appellant's brief. That case was followed in City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259, 265, where, after stating the general rule, the court said: "That general rule is often qualified in its statement so as to apply when the facts are peculiarly within the knowledge of the witness. Alabama Power Co. v. Allen, 218 Ala. 416, 118 So. 662." The court correctly held in Alabama Power Co. v. Allen, supra, that the appellee "had no better, if as good an opportunity" as the appellant

to know one of the principal facts in issue and that the objection to argument of appellant's counsel, commenting on appellee's failure to take the stand was properly sustained. In City of Bessemer v. Clowdus, supra, the court correctly held that the remark of counsel for plaintiff: "Now, gentlemen of the jury, the city has offered no explanation as to why they allowed this condition," was not subject to objection, it being a true statement and borne out by the record.

We explain the quoted statements from these two cases as follows: When the fact or facts are peculiarly within a party's knowledge, and he fails or refuses to testify, when present at the trial, such failure or refusal is always subject to comment by the opposite party in a civil action; but the fact that matters in issue are not peculiarly within the party's knowledge is not of itself a sufficient ground to bar the adversary from commenting on his failure or refusal to testify.

Appellant also urges that the motion for a new trial should have been granted because of the injection of the existence of liability insurance on behalf of appellant. Counsel for appellee did make direct references to liability insurance, both in cross-examination of a witness and in argument. In the ordinary course of a trial, these remarks would have been highly prejudicial and would have been proper grounds for granting a motion for a new trial or a reversal on appeal under the rules enunciated in Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781, and Colquett v. Williams, 264 Ala. 214, 86 So.2d 381. But this trial did not take the ordinary course and it is necessary to state the factual background on this question.

At the outset of the trial, the jury panel was qualified as to membership in the Farm Bureau or as to any connection with the Alabama Farm Bureau Mutual Casualty Insurance Company. Appellant called Frank M. Stewart as its second witness. Mr. Stewart testified that he had been closely associated with dairies since 1914; that he studied agriculture and was graduated from Auburn in 1923; that since graduation, he had been engaged in the production of fluid milk; that he presently operated a dairy; that he had studied the feeding and milking of cows; that he had been employed by the Alabama Milk Control Board for nine years; that he was elected and served as Commissioner of Agriculture and Industries for the 1951–55 term; and that he was presently employed by the Alabama Farm Bureau Federation. After this introduction, the effect of his testimony on direct examination was that the defendant had furnished a safe place for appellee to work.

On cross-examination, Mr. Stewart testified, over appellant's objections, that Walter Randolph was President of the Alabama Farm Bureau Federation; that Randolph was his "boss;" that Randolph was also President of Alabama Farm Bureau Mutual Casualty Insurance Company, an affiliate of the Farm Bureau; that to secure insurance with that Company, one must be a member of the Farm Bureau; that the Farm Bureau and its Insurance Company offices in Tuscaloosa were in the same place, and that Mr. Stewart had been in that office the morning of the day he testified.

When Mr. Stewart was excused as a witness, and out of the presence and hearing of the jury, appellant made a motion to exclude all the testimony of Stewart relating to the Insurance Company. The trial court said:

"It being made to appear to the Court that Walter Randolph is president of the Insurance Company carrying the risk in this case and that he is president of the Farm Bureau and is the boss of Frank Stewart, the Court overrules the motion."

Appellant then made a motion for a mistrial. Counsel for appellee stated that the only reason for propounding the questions to the witness, Stewart, was "to show his

interest and bias in the case and for no other purpose whatsoever." The court overruled the motion and appellant excepted.

In arguing the case to the jury, counsel for appellee said:

"* * * Where are the rest of the Hintons that own and operate that dairy? Not a single one has come in and told you or given you any testimony from which you could infer they were not responsible for the injury of Mr. Strahan and that they thought he ought not be compensated. The only one that came in was Mr. Claude Hinton, Sr., and he said he thought he was entitled to be compensated. That is the facts in the case. Who is it doesn't want him to be compensated? I will ask you that and you answer with your own common sense. His Honor will charge you you have a right to use your common sense. Who was the man from Montgomery who came got on the witness stand? Mr. Frank Stewart came all the way from Montgomery when we have got all kinds of dairy people here in Tuscaloosa County. They went to Montgomery and got him. Who does he work for? What is his interest in the case? Who does he work for? He works for Alabama Farm Bureau and Walter Randolph is its president. He said Walter Randolph was president of Alabama Farm Bureau Mutual Casualty Insurance Company. Who else was over there? Alabama Farm Bureau Federation and Alabama Farm Bureau Insurance offices are there together and he came down here to testify. Did he have any interest in this case? Who is it defending this case? Who doesn't want Mr. Strahan to be compensated for his injury? * * *"

There was no objection to this argument at the time it was made. On motion for a new trial, appellee adduced evidence that Frank M. Stewart had been a member of the Board of Directors of Alabama Farm Bureau Mutual Casualty Insurance Company.

Attorneys have the right to try their cases as they see fit so long as they stay within the applicable statutes and rules. Counsel for appellant evidently took a calculated risk. Certainly, Mr. Stewart was a leading expert on the dairy business in Alabama, and his qualifications recommended his testimony to the jury. However, it is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice or partiality concerning the matters about which he is testifying. Alabama Power Co. v. Gladden, 237 Ala. 527, 187 So. 711; 19 Ala.Dig., Witnesses, ☞363(1), 370(1). It has been specifically held that the connection of a witness with a company carrying liability insurance may be shown as tending to show bias on the part of the witness, Pittman v. Calhoun, 231 Ala. 460, 165 So. 391; Hunt v. Ward, 262 Ala. 379, 79 So.2d 20, and commenting on the fact in argument does not constitute reversible error. J. H. Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46. See Annotation 4 A.L.R.2d 775, § 5. The case of Aguilera v. Reynolds Well Service, Tex.Civ.App.1950, 234 S.W.2d 282, 285, is concerned only with the question of the injection of insurance in the cross-examination of a witness, and the court concluded with this statement, citing cases from many jurisdictions including Alabama:

"We are unwilling to hold that an agent of an insurance company which is a real party at interest may take the stand as an apparently disinterested witness, give testimony damaging to the opposing party, and then be exempt from cross-examination designed to show his connection with the company."

It was not error for counsel for appellee to show and comment on Mr. Stewart's connection with and employment by the President of the Insurance Company.

**314**

Appellant had called him as a witness and appellee was entitled to show any interest he might allegedly have in the case. We point out that appellant was entitled to have the court limit the evidence to the possible interest or bias of the witness had such a request been made. As already noted, appellee informed the court that the questions were propounded to the witness for that purpose only.

Appellant evidently concedes this to be the law but argues that appellee did not introduce the policy of insurance showing coverage as was done in Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757. We did not need to decide that question. In the case of Pittman v. Calhoun, 231 Ala. 460, 165 So. 391, 393, the court said:

> "Deal's company had liability insurance on the car which struck the plaintiff, and the witness had interested himself about the case, and it was permissible to show that Deal represented the company, as tending to establish bias on the part of the witness, a fact always permissible to be shown in order that the jury may properly weigh the testimony of such witness. [Citing cases.]"

We have examined the original record in that case, and the name of the particular insurance company nowhere appears except on the appeal bond. There is nothing to indicate that there actually was any insurance coverage by any particular insurance company. We must assume that the information that "Deal's company had liability insurance on the car which struck the plaintiff" was contained in brief of appellant because such information is not contained in the bill of exceptions. On that authority, we hold that it was not necessary for appellee to have introduced the insurance policy to entitle his counsel to make the comments complained of in the instant case.

 Appellee filed a motion to strike that portion of the transcript which, taken on the motion for a new trial, shows the verbatim arguments of counsel for appellee to the jury. Appellee contends that the arguments are hearsay because they were taken by the court reporter in a private capacity and not in his official capacity. (He was employed by appellant to take and transcribe the argument of counsel for appellee to the jury.) The reporter testified that he did write and transcribe the arguments and thus properly authenticated them. There is no merit in the motion, nor in the argument that the reporter should have been required by the court to furnish appellee with a copy of arguments of counsel for appellant without his having previously arranged for such.

The judgment of the lower court is due to be affirmed.

Affirmed.

All the Justices concur.