ADAMS, Justice.
Monica Pattillo appeals from a judgment based on a jury verdict in favor of Dr. Fernando A. Sanchez in a medical malprac *444 tice action alleging that Sanchez had negligently treated Pattillo when she sought medical attention following abdominal surgery.
First, Pattillo contends that the trial court erred in refusing to grant a new trial when, following the jury verdict, it was discovered that the wife of one of the jurors was a patient of Dr. Sanchez. Pattillo argues that if she had known this fact, she would have struck the juror; because the juror did not reveal the doctor/patient relationship between his wife and Dr. Sanchez, Pattillo contends that she was prejudiced and that a new trial should be ordered. We disagree.
Counsel for Pattillo propounded the following questions to the jury venire regarding their relationship to Dr. Sanchez:
“The Judge told you a little bit about the facts. First of all, that it’s a malpractice case, medical malpractice or medical negligence case. Is there anyone here who has a fixed opinion, either pro or con, with regard to a negligence case that is brought against a doctor? Does everyone — let me ask it this way.
“Is there anyone who feels that they could not sit and listen to the facts? Sit on the jury and listen to the facts as they are presented from the witness stand and render a fair and impartial verdict both as to Monica Pattillo or Dr. Sanchez? Yes, ma’am.
“A JUROR: I know Dr. Sanchez. I’m his patient, so I don’t think I could be fair.
“MR. DILLARD: Your name?
“A JUROR: J.A.S.
“MR. DILLARD: Is there anyone else? That was my next question, and I appreciate Mrs. S. You helped me to remember things. Is there anyone here who has been a patient of Dr. Sanchez at one time? He practices over in the Valley. Yes, ma’am. Tell me your name, please, ma’am.”
It is clear from the record that the venire was never questioned with regard to whether family members had been patients of Dr. Sanchez; therefore, the juror did not withhold information in response to a direct question asked by Pattillo s attorney. Furthermore, it is evident from the following exchange, which occurred at a post-trial hearing, that the juror did not know at the time of the trial that his wife had seen Dr. Sanchez.
“Q. Mr. D., it’s my understanding that when you were asked the question, whatever it was, at the time you were asked that question concerning ... whether you or if the question was any member of the family had seen Dr. Sanchez, you did not recall that your wife had seen Dr. Sanchez; is that correct?
That s right. i>
And you did not learn or recall that your wife had seen Dr. Sanchez until after the trial was over; is that correct? £
“A. That’s right.”
Based on the foregoing, we conclude that the trial court did not err in refusing to grant a new trial on the basis of the juror’s answer.
Second, Pattillo argues that the trial court erred to reversal in refusing to allow her to question several doctors who testified as experts for the defendant, regarding their ownership of stock in Mutual Assurance Society of Alabama (“MASA”), which insured the defendant. With regard to the cross-examination of witnesses, we have said:
“In Alabama, a party is entitled to a thorough and sifting cross-examination of the witnesses against him. Ala.Code (1975), § 12-21-137; Riley v. City of Huntsville, 379 So.2d 557 (Ala.1980); Coward v. McKinney, 277 Ala. 513, 172 So.2d 538 (1965). The cross-examination is not limited to matters addressed in the witness’s direct testimony, but may concern all matters relevant and material to every issue of the action. Ala.R.Civ.P. 43(b); Coward, 277 Ala. 513, 172 So.2d 538 (1965). Of course, the trial court is vested with considerable control over the scope of cross-examination, and its rulings thereon will not be reversed in the absence of a gross abuse of discretion *445 that causes substantial injury to the objecting party. Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975); General Electric Co. v. Mack, 375 So.2d 452 (Ala. 1979); Watson v. City of Florala, 420 So.2d 55 (Ala.1982); General Telephone Co. v. Cornish, 291 Ala. 293, 280 So.2d 541 (1973). The trial court may not, however, limit cross-examination as to a relevant and material matter until the examining party has substantially exercised his right to question the witness thereon. Riley, 379 So.2d 557 (Ala.1980).”
Perry v. Brakefield, 534 So.2d 602, 607-08 (Ala.1988). Before this action was filed, MASA had been converted from a mutual company to a corporation with publicly traded stock. In Otwell v. Bryant, 497 So.2d 111 (Ala.1986), this Court addressed this issue; however, when it decided Ot-well, MASA was a mutual company. We wrote:
“We will consider first the issue of whether testimony that the defense’s experts belonged to the same mutual liability insurance carrier should have been allowed. The appellants argue that the trial court improperly refused to allow evidence that witnesses presented by both the appellants and appellees were covered under professional liability insurance.
“The appellees in this case, Dr. Bryant and Anniston Urologic Associates, are insured by the Mutual Assurance Society of Alabama (MASA). Additionally, ap-pellee’s witnesses, Dr. Gibbs and Dr. Talbot, were insured by MASA and appel-lees’ witness, Dr. Crowe, was president of MASA at the time of this litigation and was a member of the claims committee reviewing this case. MASA was formed to provide malpractice insurance for doctors after the major malpractice carriers stopped writing policies in Alabama. The doctors who are members of the society pay money each year to the fund. Malpractice awards are paid out of this fund and MASA has paid a dividend in the past, which is just a return of part of the premiums.
“During the trial of this case, the trial judge granted the appellees’ motion in limine concerning any reference to liability insurance with respect to any witness, and ordered removed from the video deposition of Dr. William A. Talbot, Jr., a witness on behalf of the appellees, those portions of appellants’ attorney’s cross-examination concerning Dr. Talbot’s liability insurance carrier, MASA. The deleted testimony would have revealed that Dr. Talbot is insured by the same liability carrier which insures the appellees. Consequently, at trial appellants were not only precluded from questioning any witness on direct about MASA, but were also not allowed to cross-examine or impeach appellees or appellees’ witnesses by a showing of their pecuniary interest, bias, or prejudice resulting from their relationship with MASA.
“A plaintiff may not ordinarily introduce evidence showing that the defendant has liability insurance. Welborn v. Snider, 431 So.2d 1198 (Ala.1983); Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781 (1956). The appellants contend that a showing of liability insurance coverage is permissible if offered for the purpose of demonstrating bias or prejudice of a witness in favor of a particular party of the case. We recognize that the trial court has discretion to admit evidence to show the bias, prejudice, or interest of a witness, Osborne v. Cobb, 410 So.2d 396 (Ala.1982); however, this rule applies only in certain limited situations. In Hinton & Sons v. Strahan, 266 Ala. 307, 96 So.2d 426 (1957), this Court sustained the trial court’s ruling allowing the introduction of evidence that a witness who testified in behalf of the defendant had a connection with the liability insurer of the defendant. The connection between the witness and the insurer was not simply that of a policyholder, as in the present case. The witness testifying in Hinton was a member of the board of directors and was employed by the liability insurer. This Court made it clear in Hinton that the witness must be an ‘agent’ of the insurer before interrogation about insurance coverage would be acceptable.
*446 “That this Court did not intend to [imply] in Hinton that simply being a policyholder of the same company insuring a defendant allows the injection of insurance is further supported by this Court’s decision in Robbins Engineering, Inc. v. Cockrell, 354 So.2d 1 (Ala.1977). In rejecting the plaintiffs contention that proof of an indemnity agreement was admissible to show bias, this Court distinguished Hinton and noted that the witness undergoing questioning in Hinton was ‘employed by the insurance company and his bias would be apparent.’ (Emphasis supplied.)
“Hinton and the cases following it do indeed recognize that under certain circumstances a witness may have a sufficient degree of ‘connection’ with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness. What is missing in the present case is the sufficient degree of ‘connection.’ The coincidental fact that the witness and the defendants are both insured by MASA is not an adequate degree of connection to counter-balance the undue prejudice that will result to the defendants through alerting the jury to the existence of liability insurance.
“The appellants offer two cases in support of their contention that proof of insurance may be offered to show bias. These cases are distinguishable from the case at bar. In Majestic v. Louisville & N.R. Co., 147 F.2d 621 (6th Cir.1945) the witness was an employee of a party who had an interest in the ultimate recovery in the case. The court stated that the witness’s employment could be shown for the purpose of testing his credibility as a witness. Similarly, in Charter v. Chleborad, 551 F.2d 246 (8th Cir.1977), cert. denied, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977), a witness was called by the defense to criticize the reputation for truth and veracity of the plaintiff’s expert witness. The witness called by the defense was an attorney who regularly defended physicians and ‘was employed in part by the same liability carrier’ that provided professional liability insurance to the defendant-physician. All of the federal decisions upon which the appellants rely fall squarely within the narrow exception to the general exclusion of evidence of liability insurance that this Court outlined in Hinton, supra.
“Two courts from other jurisdictions have been confronted with factual circumstances similar to those in the present case. In each instance, these courts have ruled that evidence that a witness was insured by the same liability carrier as the defendant was inadmissible. In Mendoza v. Varon, 563 S.W.2d 646 (Tex. Civ.App.1978), a medical malpractice action, Mendoza, the plaintiff, attempted to introduce evidence that Dr. Varón and one of his expert witnesses had professional liability insurance through the same insurance company. According to the Texas court, the fact that the witness was merely a policyholder of the same company did not present a sufficient degree of connection with the carrier to warrant proof of this relationship. The Court stated:
“ ‘In the present case, however, the witness had no direct interest in the outcome of the litigation, as would an agent, owner or employee of the defendant’s insurer. While it is true that a large judgment against any doctor will probably affect the insurance rates of other physicians, this interest is remote, and any proof of bias based upon that interest is outweighed by the prejudice caused by informing the jury of the defendant’s insurance protection. Accordingly, this case falls within the rule that testimony calculated to inform the jury of the defendant’s insurance coverage is inadmissible, Rhoden v. Booth, 344 S.W.2d 481, 487 (Tex.Civ. App. — Dallas 1961, writ ref’d n.r.e.), and the trial court did not err in excluding this line of inquiry.’
“ ‘Mendoza v. Varón, at 649.’
“The Court of Appeals of New Mexico reached a similar result in Davila v. Bodelson, 103 N.M. 243, 704 P.2d 1119 (N.M.Ct.App.1985), cert. denied, 103 N.M. *447 177, 704 P.2d 431 (N.M.1985). In Bodel-son the plaintiff sought to question the defendant, Dr. Bodelson, and Dr. Bodel-son’s expert, Dr. Hutchison, regarding provisions of the State Medical Malpractice Act. The plaintiff sought to establish that a state fund existed to pay a portion of any malpractice judgment in excess of $100,000. The plaintiff reasoned that this introduced personal bias on behalf of Dr. Hutchison in that a verdict in favor of Dr. Bodelson might decrease the,risk of Dr. Hutchison’s exposure to an annual surcharge. The appellate court sustained the trial court’s order granting the physician defendant’s motion in limine which prohibited questioning of medical expert witnesses with regard to the existence and source of medical malpractice insurance. The court noted that in balancing the probative value of this evidence against its prejudicial effect, the scales tipped in favor of a finding that the defendant would be unduly prejudiced if this evidence were permitted.
“We are of the opinion that the trial court correctly determined that the testimony that the defense’s experts belonged to the same mutual liability insurance carrier was inadmissible. The testimony by the appellees at trial was clear and uncontroverted that no verdict, even a catastrophic verdict against the defendants, could have any financial effect on any witness called at the trial of this matter. The potential for bias on the part of any witness due to his coverage under a professional liability policy is so remote as to be virtually non-existent. When this remote potential for bias is balanced against the overwhelming prejudicial effect of allowing evidence of professional liability insurance, it becomes evident that admission of such evidence would be error.”
Otwell v. Bryant, 497 So.2d 111, 113-15 (Ala.1986).
MASA is presently a corporation with publicly traded stock. At least two of the experts used by Dr. Sanchez owned stock in MASA at the time of the trial in this case. The trial court, in denying the motion for new trial, defended his refusal to allow this knowledge to reach the jury as follows:
“The question concerning the stock ownership by the expert witnesses, I was satisfied at trial that to allow that question would improperly insert the question [of] insurance into this case....
[[Image here]]
“In any event, I still feel like that would have improperly inserted the question of insurance in the case, so I’m going to deny the motion for [new trial] on all of the grounds stated.”
We agree with the decision of the trial judge. Following the questioning of the experts, Pattillo was allowed, outside the hearing of the jury, to show that these experts owned stock in MASA. There was no testimony as to how MASA’s conversion from a mutual company to a corporation with publicly traded stock would automatically increase the bias of the experts. Thus, we conclude that the connection between the experts and MASA was not sufficient to overcome the unquestionable prejudice that would occur to the defendant by alerting the jurors to the existence of insurance.
AFFIRMED.
ALMON, STEAGALL, KENNEDY and INGRAM, JJ., concur.